125  297
136  242
125  297
s141  526

# Southern Railway Company *v.* Bryan, Admx. &c.

*Action against a Railroad Company by Administrator to recover Damages for alleged Negligent Killing of Intestate.*

1. *Action by administrator to recover damages for alleged negligent killing of intestate; sufficiency of complaint.*—In an action brought against a railroad company, under the statute, (Code of 1896, § 27), to recover damages for the alleged negligent killing of plaintiff's intestate, a count of the complaint, which after reciting the circumstances and surroundings of the acci-

[Southern Railway Co. v. Bryan, Admx. &c.]

dent, then avers "that the death of plaintiff's intestate was caused by the negligence of the defendant's employés who were operating defendant's said train, in the running and management of said train, to plaintiff's damage," &c., is sufficient in its averments of negligence and states a good cause of action.

2. *Statutory provisions as to railroad crossings; what required of engineers and conductors.*—Under the statute which imposes the duties upon engineers and conductors running trains upon tracks of two railroads which cross each other, (Code, §·3441), it is necessary, not only that they should require the trains controlled by them to come to a full stop within 100 feet of the crossing before attempting to cross, but they must not proceed until by the exercise of the highest degree of diligence they have ascertained that the way is clear; and if the engineer of a train on one of the intersecting roads proceeds without knowing, after the exercise of such·diligence, that the way is clear, he is guilty of negligence.

3. *Same; right of engineer to presume compliance with statute.* Although the engineer on an engine of a railroad having the older right of way can presume, when approaching a crossing, that the employés on the train upon the intersecting road will stop their trains as required by law, it is, nevertheless, his duty to keep a look out for approaching trains; and if, in the face of facts reasonably indicating that the approaching train on the intersecting road is not going to stop at said crossing, the engineer on the road having the older right of way attempts to cross, he is chargeable with negligence.

4. *Same; case at bar.*—In action against a railroad company to recover damages for the death of the plaintiff's intestate, which resulted from a collision between the engine on which the intestate was engineer and an engine on the defendant's road at a crossing of said roads, where it is shown that although the plaintiff's intestate stopped his engine within 100 feet of the crossing, he proceeded without knowing, after the exercise of the highest degree of diligence, that the way was clear, and that as the result thereof the accident occurred causing his death, such negligence on the part of the plaintiff's intestate will defeat his right of recovery and justifies the giving of the general affirmative charge requested by the defendant.

APPEAL from the Circuit Court of Jefferson.

Tried before Hon. JAMES J. BANKS.

This action was brought by Pearl O. Bryan, as ad-

ministratrix of Chas. M. Bryan, against the Southern
Railway Company, claiming $30,000 damages for
the killing of plaintiff's intestate, which was al-
leged to have been caused by the negligence of
the railway company. The complaint contained
fourteen counts. The plaintiff did not insist
upon but the first, second and third counts, and
it is only necessary to set out these three counts in de-
tail; the court having given the general affirmative
charge in favor of the defendant upon each of the other
counts of the complaint. These three counts were as
follows: "1. The plaintiff claims of the defendant,
thirty thousand dollars, as damages, for that hereto-
fore, to-wit, on the 7th day of March, 1897, the de-
fendant was a body corporate, and for the carriage of
freight and passengers, was operating a railroad, run-
ning from the city of Birmingham, Alabama, to the
city of Columbus, Mississippi, the line of said road run-
ning through a suburb of Birmingham commonly called
North Birmingham, and on said 7th day of March, 1897,
the Louisville & Nashville Railroad Company was also,
for the carriage of freight and passengers, operating a
rairoad in said county, commonly known as the Bir-
mingham Mineral Railroad, which also passes through
said suburb, North Birmingham, and crosses the de-
fendant's railroad at or near said suburb; the crossing
being known as the North Birmingham crossing. And
the plaintiff avers that on said 7th day of March, 1897,
her intestate was an engineer, in the service or employ-
ment of said Louisville & Nashville Railroad Company,
and as such engineer had charge of an engine to which
there was attached several cars, and was running said
engine and cars on said Birmingham Mineral Railroad,
and over and across the defendant's said railroad at
said North Birmingham crossing, and just as the engine
which plaintiff's intestate was running, got upon said
crossing, one of defendants trains, consisting of an en-
gine and several cars, came along on defendant's said
railroad towards Birmingham and ran into and collided
with the engine which was being operated by paintiff's
intestate, wounding and scalding plaintiff's intestate

and inflicting severe injuries upon him, from which he died within a few hours. And the plaintiff avers that the death of her intestate was caused by the negligence of defendant's employés, who were operating defendant's said train, in the running and management of said train, to plaintiff's damage thirty thousand dollars, as aforesaid, hence this suit.

"2. The plaintiff claims of the defendant, thirty thousand dollars as damages for that heretofore, to-wit, on the 7th day of March, 1897, the defendant was a body corporate, and for the carriage of freight and passengers was operating a railroad running from the city of Birmingham, Alabama, to the city of Columbus, Mississippi, the line of said road running through a suburb of Birmingham commonly called North Birmingham, and on the 7th day of March, 1897, the Louisville & Nashvile Railroad Company was, also, for the carriage of freight and passengers, operating a railroad in said county, commonly known as the Birmingham Mineral Railroad, which also passes through said suburb, North Birminham, and crosses the defendant's railroad at or near said suburb; the crossing being known as the North Birmingham Crossing. And the plaintiff avers that on said 7th day of March, 1897, her intestate was an engineer in the service of the Louisville & Nashville Railroad Company, and as such engineer had charge of an engine to which there was attached several cars. and was running said engine and cars on said Birmingham Mineral Railroad, and over which and across defendant's said railroad at said North Birmingham crossing, and just as the engine which plaintiff's intestate was running got upon said crossing, one of defendant's trains, consisting of an engine and several cars, came along on defendant's said railroad towards Birmingham, and ran into and collided with the engine which was being operated by plaintiff's intestate, wounding and scalding plaintiff's intestate and inflicting several injuries upon him from which he died within a few hours. And the plaintiff avers that the death of her intestate was caused by the negligence of F. W. Mosby, who was operating the engine on defend-

ant's said train, the said engineer's negligence consisting of this: That he failed to bring said train to a full stop within one hundred feet of said crossing, but suffered said train to run on without stopping until it ran into and collided with the train upon which plaintiff's intestate was riding, and inflicted said injuries upon plaintiff's intestate, from which he died, as aforesaid, to plaintiff's damage thirty thousand dollars, as aforesaid, hence this suit."

The third count was the same as the second count so far as the prefatory allegations were concerned, and the averments of negligence contained in said third count were as follows: "And plaintiff avers that the death of her intestate was caused by the negligence of the defendant's employes in charge of said train, in failing to have a sufficient headlight on the forward end of said train; and a failure to have a sufficient headlight prevented said engineer from seeing a sufficient distance ahead of the said train to enable him to discover the said Louisville & Nashville train within time to stop defendant's train before running into and colliding with the engine which plaintiff's intestate was operating; and the absence of such sufficient headlight caused defendant's engineer to run said train along until it collided with the engine which the plaintiff's intestate was operating and inflicted said injuries upon plaintiff's intestate, from which he died, as aforesaid, to plaintiff's damage thirty thousand dollars, as aforesaid, hence this suit."

The defendant demurred to the first count of the complaint upon the ground that the allegations of negligence therein were too general and said count did not allege with sufficient certainty the negligence complained of. This demurrer was overruled, to which ruling the defendant excepted. The defendant then pleaded the general issue and by pleas of contributory negligence set up in effect that the plaintiff's intestate, who was an engineer in charge of an engine on the Louisville & Nashville Railroad, was himself guilty of contributory negligence in failing to stop his engine within 100 feet of the crossing and in proceeding over the crossing

without knowing that the way was clear as required by the statute. The cause was tried upon issue joined upon these pleas.

It was shown by the evidence that the injury resulting in the death of plaintiff's intestate was caused by a collision between a train on the defendant's railroad and an engine and caboose on the Birmingham Mineral division of the Louisville & Nashville road at a crossing of the two railroads in North Birmingham, Alabama. It was further shown that the Birmingham Mineral branch of the Louisville & Nashville Railroad extended from Boyle's Station on the north to Bessemer on the south and crossed at a right angle in North Birmingham the track of the Southern Railway, which ran in an easterly direction from Columbus, Mississippi, to Birmingham. The Louisville & Nashville engine had attached to it only a caboose. The headlight was burning on the engine and in the rear, it being a switch engine; the plaintiff's intestate was the engineer upon this engine. The train on the Southern Railway was running as an extra train and consisted of an engine and from nine to twelve cars, including the caboose. The collision occurred at about 2 o'clock in the morning. The other facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury many written charges, and separately excepted to the court's refusal to give each of them as asked; among these charges was the general affirmative charge in its behalf.

There were verdict and judgment for the plaintiff, assessing his damages at $8,000. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

SMITH & WEATHERLY, for appellant.—The main contention of the appellant is that on the undisputed evidence in the case, a verdict should have been directed by the court for the defendant, on the ground of contributory negligence of the plaintiff's intestate, and also

upon the ground of the admitted negligence of Norton in causing the Louisville & Nashville engine to proceed over the crossing *without knowing that the way was clear.*—Code 1886, § 1145; Code 1896, § 3441. The statute declares that "when the tracks of two railroads cross each other, the engineers and conductors must cause the trains, of which they are in charge to come to a full stop within one hundred feet of such crossing *and not proceed until they know the way to be clear,* the train on the railroad having the older right of way being entitled to cross first." This statute has been frequently construed by this court.—*B'ham Min. R. R. v. Jacobs,* 92 Ala. 187; *B'ham Min R. R. v. Jacobs,* 13 So. Rep. 408; 101 Ala. 149; *R. & D. R. R. Co. v. Greenwood,* 99 Ala. 501; *L. & N. R. R. Co. v. Anchors,* 22 So. Rep. 279; 114 Ala. 493.

If the L. & N. engine stopped for the crossing, and within one hundred feet of it, and if the engineer and conductor then looked and listened carefully and with that eager diligence required by the statute, so as to know that the way was clear, and would remain clear for the passage of their train over the crossing, then it is not consistent with reason that it should have collided with a train on the crossing, which, prior to that time, had not been seen or heard, and whose approach had not even been suspected. This court is not to accept a conclusion which is wholly unreasonable, and which is shocking to the common sense, and it is not bound by any inference attempted to be drawn from this testimony, that the plaintiff's intestate could not reasonably have foreseen and apprised himself of the approach of the Southern train.—*Warden v. L & N. R. R. Co.,* 94 Ala. 277, 286 and cases cited; *L. & N. R. R. Co. v. Binion,* 14 So. Rep. 619; 107 Ala. 695; *Davis v. Miller,* 19 So. Rep. 699.

Defendant was also entitled to the general affirmative charge as to the case made by the third count of the complaint. That count was based solely on the defendant's failure to have a sufficient headlight on its engine, and such failure is averred to have been the sole and approximate cause of the homicide complained of, in that

it is claimed that the absence of the headlight prevented the engineer from discovering the approach of the other train to the crossing in time to have avoided the collision. The failure to have the headlight may have been negligence, but mere negligence is not sufficient to entitle the plaintiff to recover. The evidence must go further and show that the negligence complained of was the proximate cause of the death of the plaintiff's intestate.—*Western Ry. of Ala. v. Mutch*, 97 Ala. 191, 196, 197; *Railroad Company v. Hembree*, 89 Ala. 481; *K. C. M. & B. R. R. Co. v. Watson*, 91 Ala. 483.

The court erred in the portions of its oral charge which were excepted to by the defendant.—*L. & N. R. R. Co. v. Hall*, 87 Ala. 708, 721; *McGhee et al. v. Reynolds*, 23 So. Rep. 68.

LANE & WHITE, *contra.*—It will be observed that the court gave the general affirmative charge as to all of the counts of the complaint except the first three; so that, as to the rulings upon the demurrers to the other counts of the complaint, they were errors without injury if they were errors at all.—*Woodward Iron Co. v. Andrews*, 114 Ala. 243. Now, as to the demurrers to the first count: It is well settled that mere general statements of negligence in a complaint are sufficient.—*Ga. Pac. R. R. Co. v. Davis*, 92 Ala. 307; *M. & O. R. R. v. George*, 94 Ala. 214. This count avers that defendant's engine and cars came along and ran into the L. & N. train, upon which plaintiff's intestate was riding, and that this was owing to the negligence of defendant's employes in the management and running of said train. This states a cause of action and it is sufficiently specific under our system of pleadings. The facts stated raised a presumption of negligence.—*H. A. & B. R. R. Co. v. South*, 112 Ala. 649; *B'ham Min. R. R. Co. v. Jacobs*, 13 S. Rep. 411. It was not necessary for the complainant to allege that the train on which plaintiff's intestate was riding came to a full stop. This is a matter of defense.—*C. & W. Ry Co. v. Bradford*, 66 Ala. 574. The court committed no error in the charge given *ex mero mortu* at the request of the plaintiff, and in refusing to

give the charges requested by the defendant.—*R. & D. R. R. Co. v. Freeman*, 97 Ala. 297; *Alabama Great Southern Railroad v. Jones*, 71 Ala. 495; *A. G. S. R. R. Co. v. Roach*, 110 Ala. 267; *R & D. R. R. Co. v. Farmer*, 97 Ala. 141.

HARALSON, J.—Section 3441 of the Code provides: "When the tracks of two railroads cross each other, engineers and conductors must cause the trains of which they are in charge, to come to a full stop within one hundred feet of such crossing, and not proceed until they know the way to be clear; the train on the railroad having the older right of way being entitled to cross first."

This statute as it appeared in the Code of 1867, § 1403, required these officers to come to a full stop within 50 feet of the place of crossing, and then to move forward slowly, the train of the elder road to have the privilege of crossing first. By the succeeding section, 1404, it was provided that if these officers failed to comply with the requirements of the preceding section (1403) they should be deemed guilty of a misdemeanor, punishable, on conviction, by a fine of not less than $500 nor more than $1,000, and be imprisoned in the county jail not more than twelve months at the discretion of the jury trying the cause. These two sections were carried substantially into the Code of 1876, as §§ 1702 and 4257. When carried into the Code of 1886, these sections appear as §§ 1145 and 4108, changed to their present form, the first prescribing 100 feet instead of 50 as the limit for stopping, and not to proceed until they (the engineer and conductor) know the way to be clear, the latter imposing fine and imprisonment in the county jail or hard labor for the county,—*one or both* at the discretion of the jury, and, as thus modified, they appear in the Code of 1896, as §§ 3441 and 4371.

We have several times construed said § 3441. Each train, it is plain, must come to a full stop within 100 feet of the crossing, before attempting to cross. It must not only stop absolutely, but "not proceed until they (the engineer and conductor) know the way to be clear." The duty of ascertaining that the way is clear before

proceeding is as obligatory as the duty to come to a full stop. The mere stopping would not answer the requirements of the statute, passed to prevent collisions, if the latter requirement were ignored. The stopping and taking in the situation before crossing is positively enjoined, which the employés in charge cannot avoid, without being guilty of the most culpable negligence. But these requirements are not enough. Without more, the statute would be lacking in completeness for the purposes intended. To stop anywhere within the 100 feet limit, even so close up to the crossing as just to admit of the passage of another train without liability to damage, would answer the first requirement of the statute. When two trains stop within the limit, if the law did not prescribe which shall have the prior right of way, there might arise contention between the two as to that right, and damage, which the statute would render impossible, if its mandates are observed, might occur. To obviate this trouble the statute wisely prescribes that the train having the older right of way is entitled to cross first.— *Birmingham Mineral R. R. Co. v. Jacobs*, 92 Ala. 187. But this latter provision is not to be construed into a license to the older company itself in the exercise of this prior right to cross, to be negligent in any particular. Although the presumption may be indulged by it, that the other company will not violate the law in proceeding contrary to the provisions of the statute, still, if the circumstances indicate that the other train will not stop, but will proceed, the older train must stand still until the disobedient and negligent train has passed beyond the crossing, and left the track clear for it to proceed. It would not do, under such circumstances, for the road having the older right of way itself to be negligent, and thereby cause a collision, and afterwards seek exemption from liability to damages for injuries inflicted, by comparing its own with the other train's negligence and attempt to set one off against the other. Each train may reasonably indulge the presumption that the other will comply with the mandates of the statute, but this presumption will not protect either from liability for want of care in proceeding, when it becomes

apparent or reasonably so, that the other train is negligent and disobedient.—B. M. R. R. Co. v. Jacobs, 101 Ala. 149; 3 Elliott on Railroads, § 1132; 3 Rap. & M. Dig. R. Law, 417, §.80. . .

: It is a matter of dispute and conflict in the evidence, whether or not the L. & N. train stopped within a hundred feet of the crossing, and whether or not the defendant's train stopped within that limit, the contention of each party being that the other train did not stop—which the defendant's evidence rebuts—and that for the defendant, that its train stopped, and there is no conflict in this fact, except that found in the evidence of one Capers, the only witness introduced by plaintiff to show that defendant's train did not stop, which evidence has tendencies to show that fact, so that the question as to whether either or both of said trains stopped or not is one of disputed fact, proper if necessary, for the determination of the jury. It is also in dispute whether the L .& N. engine was first on the crossing and was struck by the defendant's engine, or whether the defendant's engine was the first there, and was struck by the L. & N. engine.

There was a great mass of evidence introduced to show that the L. & N. was the stricken and not the striking engine, and an equal amount, perhaps, to show the reverse of this—that the defendant's was the engine that was run against by the L. & N. engine. The night was dark, somewhat cloudy, without moon or starlight. The defendant's engine had no headlight, the oil in its lamp having gone out at Coalburg, about ten miles west of the crossing. For the headlight a lantern had been placed in the headlight case, which the evidence tended to show, did not light up the track ahead, or subserve the purposes of a headlight. The train on defendant's road was an extra running from Corona on the west to Birmingham on the east, and consisted of about a dozen freight cars, all loaded with coal, besides a caboose; and its crew consisted of the conductor, engineer, fireman and two brakemen. The conductor at the time of the accident was on the front platform on his caboose, and the two brakemen were on the top of

the cars, one forward and the other further back. The engineer and firemen were in their proper places on the engine. The L. & N. train consisted merely of an engine and caboose. The conductor was in the cupola of the caboose. The brakemen were in the caboose and the engineer and fireman in their proper places on the engine—the engineer on the right and the fireman on the left. The tracks of the two roads for several hundred feet towards the crossing were straight, and that of defendant at that point was a down grade, diminishing towards and becoming level at the crossing. There were no natural obstructions to shut out the view betweeen the two roads. It was undisputed that none of the lights on the defendant's train were seen by the crew of the L. & N. train prior to the collision. The fireman of the L. & N. was not examined, and the evidence is silent as to what, if anything, was dicovered by the engineer or fireman of that train, prior to the collision. Conductor Norton and the others of the L. & N. train testified that they knew nothing whatever of defendant's approaching train, until they heard the signal sounded "just a thought" before the collision, and none of them actually saw defendant's train prior to the collision. Norton, the L. & N. conductor, admitted that he did not look out up the track of the Southern, at any time prior to the collision, but looked right ahead of him.

Conductor Dillard and his fireman, on defendant's train, testified that they were aware of the approach of the L. & N. train, and saw it when it emerged from the woods, from 400 to 750 feet above the crossing—as variously estimated by witnesses. The defendant's engineer, Mosby, was advised by his fireman of the approach of the L. & N. and Dillard swore that he saw the other train coming; that it was coming pretty rapidly and was going to run into his train, but he did not do anything to stop nor signal to the engineer to do so. The defendant's train had the prior right of way.

There were fourteen counts in the complaint, but the plaintiff abandoned all except the first three, counting on the simple negligence of the defendant, which counts will be set out in the report of the case. The only error

as to rulings on these counts here insisted on, is the overruling of the demurrer to the first count. That count, under the rule long established and many times reaffirmed in this court, was sufficient in its averments of negligence.—*M. & C. R. R. Co. v. Martin*, 117 Ala. 381; *Armstrong v. M. St. R. Co.*, 123 Ala. 233 and authorities referred to in those cases.

The case was tried on the pleas of not guilty and of contributory negligence on the part of the plaintiff's intestate. The pleas of contributory negligence state, in effect, that the plaintiff's intestate, being the engineer in charge of the L. & N. engine, was himself guilty of contributory negligence in failing to stop within a hundred feet of, and in proceeding over the crossing without knowledge that the way was clear, as required by statute.

The vital question in this case is, whether or not the deceased was bound under the statute to *know* that the crossing was clear before he undertook to cross, and not to proceed until he knew the way was clear.

The word "*know*," as employed in this statute, is not of uncertain meaning. It implies that the officers in charge shall be informed, or made aware of the situation, shall be certain of or made familiar with, and not be doubtful thereof. There is no escape from the conclusion that the requirement to come to a full stop within the prescribed 100 feet of the crossing is a peremptory injunction; and in order that the danger of collisions at such crossings be made as near as possible impracticable, the mandate, of not less binding force than that of stopping, is added that they "must not proceed until they *know* the way to be clear." Each is required by statute under penalty for disobedience. Can the knowledge required to be had by the engineer and conductor, that the way is clear mean less than that they shall take such steps as are necessary to inform and make themselves certain, and not be doubtful of the fact? If one upon whom such a duty is imposed, takes the necessary steps to thus make himself aware of the situation at or about the crossing, and uses all diligence necessary to that end, and there is an absence of another

train, so far as the diligent exercise of his senses will discover, with which he may collide, this would be knowledge on his part such as the law requires. But, to acquire such knowledge, he must exhaust all necessary means to make himself certain; or, in other words, he must exercise not simply ordinary, but the highest degree of diligence to ascertain that the way is clear. This knowledge may not imply, however, that the way will certainly remain clear against all after occurring, extraordinary, unanticipated and unascertainable happenings.

This statute is not merely declaratory of the common law. Without it, the duty of the engineer would require him to use reasonable or ordinary care to avoid collision—to stop, if necessary, and not proceed until, by reasonable diligence, he ascertains that he may do so safely. If nothing more than ordinary care is required under the statute, it would seem it may as well, for the ends proposed, have not been adopted. The legislature evidently did not deem such degree of care sufficient in such an emergency, where the danger to life and property is so great, and the statutes were passed, manifestly, to impose a higher degree of diligence than was theretofore required—extraordinary care on the part of those running trains to prevent collisions such as that with which we deal. The officers upon whom the duties imposed by the statute are devolved, cannot neglect their discharge, without committing a penal offense and rendering their company liable for consequent injuries.

In speaking of the statutory duties at a crossing, Mr. Elliott observes: "The rule supported, we think, by the weight of authority is that one who violates the law is a wrong-doer; that ordinarily the omission of the statutory duty is negligence *per se*, and that where the omission is established, such negligence arises as a matter of law."—3 Elliott on Railroads, § 1155, n. 4 and authorities cited; 3 Rap. & Mack's Dig. Ry. Law, pp. 511, 512. This is the doctrine maintained by our own court. The case of *R. & D. R. Co. v. Freeman*, 97 Ala. 289, 297, was one where the plaintiff's intestate was killed in a collision of the defendant company and a train of the

B. M. R. R. Company, on which he was a brakeman. The roads crossed at right angles. While the B. M. train was crossing the track of the R. & D. road, the train of the latter ran into it at or near the car on which the intestate was discharging his duties as brakeman, and killed him. The court said: "The evidence is without conflict that the R. & D. train was not stopped within 100 feet of the crossing, as is peremptorily required by statute.—Code, § 1145 (3441 of Code of 1896). Indeed, it was not stopped at all in its approach to the crossing. This failure to comply with the statute was *per se* at least negligence on the part of those in charge of the R. & D. train, for the consequences of which that company is answerable." It was held that the general charge should have been given in favor of plaintiff, no contributory negligence of his intestate having been shown.—*Ensley R. Co. v. Chewning*, 93 Ala. 24.

In the case we have, it seems to us it cannot be questioned under the uncontradicted evidence, that the defendant's train, with which there was danger of collision with the L. & N. train, was very near at hand, and that its presence might have been ascertained by the highest degree of diligence on the part of the deceased. Indeed, it would seem that *reasonable* diligence might have disclosed its presence. The two engines in the bisecting tracks—to repeat some of the facts already stated—were so near each other that when they started across they collided with great force, and it remains a disputed question, not free from difficulty to determine, which first struck the other. The L. & N. train had a good headlight, which threw a light on its track with widening scope as it got farther away from the engine. The engine on the defendant's train had no headlight, but a very poor, insufficient substitute therefor, and the train was poorly supplied with lanterns, for one that had no headlight. The train of defendant, it must be admitted under the facts of the case, made a blind approach to the crossing. But it cannot be held that the circumstances were such that one on the L. & N. train might not, in the exercise of the highest degree of diligence, have discovered its presence. It is not to be pre-

sumed, without a negligent disregard of duty on the part of the engineer and conductor on the L. & N. train, because no regular train of the defendant was due at that point, that no extra train might not be there and about to pass. The presumption should, the rather, have been indulged, that one might be there; and the omission to ascertain that fact, if the highest degree of care and diligence could have disclosed it, cannot excuse the neglect to exercise it on the part of the deceased engineer. The darkness of the night and the blind approach of the defendant's train did not render the exercise of this diligence the less incumbent upon him, but, on the contrary, it should have quickened his diligence to ascertain his bearings and the dangers of the situation. The engineers and conductors of each of those trains were, as we have seen by the very terms of the statute, forbidden absolutely to cross the tracks until they knew the way to be clear for them to pass in safety. This engineer did not know that fact, but he proceeded to cross without knowing it and without the exercise of that extraordinary care the statute required at his hands. He evidently proceeded, as the evidence of the conductor tends to show, upon the appearances of the surroundings, and upon the idea that so extraordinary a thing as an extra train coming along on the other road at that hour could not happen; and beguiled thus into a sense of security, he went along, not knowing or believing that danger and death were so near at hand. That he acted in good faith we need not deny. The loss of his life in the venture he ran will attest that. His acts and not the sincerity of his purpose must determine whether he acted negligently or not. "A negligent act is none the less negligently performed, because of the good faith that characterizes it." If we preserve the integrity of the statute, we see no escape from the conclusion we reach. The general charge should have been given for the defendant.

Reversed and remanded.