# Southern Railway Co. *v.* Bonner.

*Action against Railroad Company by Administrator to recover Damages for alleged Negligent Killing of Intestate.*

1. *Evidence; when secondary evidence of testimony of absent witness not admissible.*—Evidence as to what an absent witness testified upon a former trial of the same case, is not admissible when the only predicate for the admission of such evidence is the testimony of a witness that he did not know exactly where the absent witness lived; that he had seen him three or four months before the trial in the county where the trial was being had, and said witness stated to him that he was at work in Texas; that he knew said witness was living in Texas because he then told him he was living there.

2. *Action against railroad company for death of plaintiff's intestate; admissibility of evidence.*—In an action against a railroad company to recover damages for the death of plaintiff's intestate, which resulted from a collision between the engine on

which the intestate was engineer, and an engine on the defendant's road, which collision occurred at a crossing of defendant's road with the road upon which the plaintiff's intestate was operating the engine, where the testimony is in conflict as to whether intestate's engine stopped within 100 feet of defendant's track before going upon the crossing, or ran at a rapid rate upon said crossing without stopping, it is competent for a witness who had testified about the speed of the intestate's train at the time of the collision, to further testify as to whether or not such speed was the usual rate of crossing another railroad after the train had stopped.

3. *Same; same.*—In such a case, where it is shown that the collision occurred at night, it is competent for an experienced locomotive engineer, after having been examined about the effect of the headlight such as was on plaintiff's intestate's engine at the time of the collision, to further testify as to whether or not, if the defendant's train was approaching the crossing, the light from the intestate's engine, thrown across such crossing within 100 feet thereof, could be seen by the engineer upon the defendant's engine.

4. *Same; same.*—In such a case, it is not competent for a witness for the defendant, who was a brakeman on this train that collided with the engine upon which plaintiff's intestate was, to testify in reference to the intestate's train; "I thought they would surely stop for the crossing;" "our engineer must have put on his air just about the time they struck us;" the position of the engines after the accident and the appearance of the front of intestate's engine clearly showed that they struck us and struck us a very hard blow."

5. *Railroad crossings; duties of engineer.*—The provisions of the statute imposing duties upon engineers and conductors running trains upon tracks of two railroads which cross each other, when approaching such crossing that they should stop, and before proceeding over said crossing they must "know the way to be clear," while requiring knowledge that the crossing is not only free from immediate obstruction, but free from danger of such obstruction as ought reasonably to be expected, such provision does not, however, require said employees to know that "the way will certainly remain clear against all after occurring, extraordinary, unanticipated and unascertainable happenings."

6. *Action against railroad company for negligent killing at crossing.* In an action against a railroad company to recover damages for the death of plaintiff's intestate which resulted from a collision between the engine on which the intestate was engineer

and an engine on the defendant's road at a crossing of its road with the road upon which the intestate's engine was running, where the cause is tried upon two counts of the complaint, one charging simple negligence, and the other wilful or intentional negligence, and where the evidence affords an inference that defendant's servants, when running its train to the crossing, were aware of the peril to which their action exposed those on the engine operated on the other road, in time to have stopped before the collision at the crossing, the general affirmative charge in favor of the defendant as to each of said counts of the complaint is properly refused.

7. *Same; charge of court to jury.*—In such a case, a charge is erroneous and properly refused which instructs the jury that "I charge you, gentlemen of the jury, that if you believe from the evidence that plaintiff's intestate stopped within 100 feet of the crossing, he cannot recover under the fourth count of the complaint, if the evidence satisfies you that he failed to know that the way was clear before attempting to cross, and you further believe from the evidence that the defendant's engineer, Mosby, did not wilfully and intentionally run its train against that upon which plaintiff's intestate was riding with a consciousness that he would likely injure some one on the train" attached to plaintiffs intestate's engine.

8. *Same; same.*—In such a case a charge is erroneous and properly refused which instructs the jury that "The usual and customary purpose of a headlight is to enable the engineer of the engine provided with the headlight to see the track ahead; and if you believe from the evidence that engineer Mosby, by keeping a careful lookout ahead, by means of a proper headlight, would not have discovered any obstruction on the crossing, or the approaching engine on the other track, in time to have avoided the collision, you cannot find a verdict for the plaintiff on account of the absence of a headlight."

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. A. A. COLEMAN.

This suit was originally brought by Pearl O. Bryan as administratrix of the estate of Charles M. Bryan, deceased, against the Southern Railway Company to recover $30,000 damages for the killing of the plaintiff's intestate. This is the second appeal in the case. After the remendment of the cause on the former appeal, the complaint was amended by substituting for the original plaintiff the present appellee, J. J. Bonner, as adminis-

trator *de bonis non* of the estate of Charles M. Bryan, deceased. On the last trial from a judgment in which the present appeal is prosecuted, the cause was tried as stated in the opinion upon two counts of the complaint. The substance of these counts are sufficiently shown in the opinion. The facts of the case are substantially the same as presented on the former appeal, to which special reference is here made, with the exception of the testimony of one Arthur Lawrence, who was the fireman on the engine of which intestate was engineer at the time of the accident. Lawrence did not testify on the first trial. The substance of his testimony and the other facts of the case necessary to an understanding of the decision upon the present appeal are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "If the jury believe the evidence, they must find for the defendant." (2.) "If the jury believe the evidence they can not find a verdict for the plaintiff under the fourth count of the complaint." (3.) "I charge you, gentlemen of the jury, that there is no evidence in this case showing wilful, wanton, or gross negligence on the part of the defendant's engineer, Mosby, and unless the evidence reasonably satisfies you that the defendant, its agents, servants or employes, were guilty of wilful, wanton, or intentional wrong, then your verdict must be for the defendant." (4.) "I charge you, gentlemen of the jury, that before you can find a verdict for the plaintiff in this case, you must be reasonably satisfied from all the evidence in this case, that the defendant's engineer, Mosby, ran his train against the engine upon which the plaintiff's intestate was riding, with the consciousness that the act which he was committing would likely result in death or injury to the plaintiff's intestate, or some other person on the train or engine of the Louisville & Nashville Railroad." (5.) "The law would not authorize or justify you in assessing damages against this defendant, however negligent it may have been, if

Bryan was himself guilty of proximate contributory negligence." (6.) "I charge you that the evidence in this case does not show wilful, wanton or intentional negligence on the part of the defendant's agents or employees." (7.) "You cannot by your verdict punish the defendant at all, or compel the defendant to pay any damages in this case, if the evidence also satisfies you that Bryan was not as careful as he should have been in approaching and attempting to pass the crossing, and that thereby he directly and proximately contributed to cause his own misfortune." (9.) "The court charges the jury that if you believe all the evidence in this case, you cannot find for the plaintiff under the first count of the complaint." (10.) "I charge you, gentlemen of the jury, that if you believe the evidence in this case, before you can find a verdict for plaintiff, you must find that the defendant's servants were guilty of wanton, wilful or intentional negligence." (11.) "I charge you, gentlemen of the jury, that under the evidence in this case, you must find that plaintiff's intestate was guilty of contributory negligence." (12.) "I charge you, gentlemen of the jury, that under the evidence in this case, the plaintiff's intestate was guilty of contributory negligence, which was the proximate cause of the injury which is alleged to have caused his death, and the plaintiff cannot recover under the first count of the complaint." (14.) "To constitute wilful injury there must be a design, purpose or intent to do wrong and inflict the injury, and unless the evidence satisfies the mind of each individual member of the jury that the defendant's engineer with design and purpose and intent to do wrong and inflict injury on some one on the train of the Louisville & Nashville Railroad Company, then you cannot find for the plaintiff on the fourth count of the complaint." (15.) "I charge you, gentlemen of the jury, that unless the evidence reasonably satisfies the minds of each individual member of the jury that the defendant, its agents, servants, or employees, ran its engine and cars across the crossing, at which it is alleged the plaintiff's intestate was killed with the consciousness that the act of running said train across the cross-

ing would probably result in injury to some person on the train of the Louisville & Nashville Railroad, then the plaintiff cannot recover." (16.) "I charge you, that before you can find a verdict for the plaintiff, under the fourth count of the complaint, the evidence must reasonably satisfy the minds of each individual member of the jury, that the defendant's engineer, Mosby, ran his train against the L. & N. train, with the present abiding consciousness, and the willingness and design and intent to do wrong and inflict injury on some one on the train of the L. & N. Railroad Company." (17.) "Unless Bryan knew the way to be clear before he went upon the crossing, the plaintiff cannot recover, unless you believe from the evidence that Mosby by using all the means at hand to avoid the collision, after discovering, or after he ought to have discovered, the peril, could not have avoided the collision." (18.) "Under the evidence and issues in this case, there can be no recovery by the plaintiff based on the defendant's failure to have its engine provided with the usual headlight." (19.) "The usual and customary purpose of a headlight is to enable the engineer of the engine provided with the headlight to see the track ahead; and if you believe from the evidence that Engineer Mosby, by keeping a careful lookout ahead, by means of a proper headlight, would not have discovered any obstruction on the crossing, or the approaching engine on the other track, in time to have avoided the collision, you cannot find a verdict for the plaintiff on account of the absence of a headlight." (20.) "I charge you, gentlemen of the jury, that if you believe from the evidence that defendant's train was not equipped with sufficient headlight, the fact that it did not have a sufficient headlight constituted only simple negligence, and would not entitle the plaintiff to recover in this suit." (21.) "The court charges the jury, that it was the duty of plaintiff's intestate to know that the crossing was clear before he undertook to cross and not to proceed until he knew the way was clear, and if he failed in this duty, and was thereby injured, he was guilty of contributory negligence, and plaintiff cannot recover in this suit." (22. ) "I charge you, gentlemen

of the jury, that if you believe from the evidence, that plaintiff's intestate stopped within 100 feet of the crossing, he cannot recover under the fourth count of the complaint, if the evidence satisfies you that he failed to know that the way was clear before attempting to cross, and you further believe from the evidence that the defendant's engineer, Mosby, did not willfully and intentionally run his train against that upon which plaintiff's intestate was riding with a consciousness that he would likely injure some one on the train of the Louisville & Nashville."

There were verdict and judgment in favor of the plaintiff, assessing his damages at $15,000.00. From this judgment the defendant appeals, and assigns as error the several rulings of the trial court, to which exceptions were reserved.

JAMES WEATHERLY, for appellant.—The negligence or wrong, if any, on the part of defendant's servants, *concurred* with the negligence of Bryan, up to and at the very moment of the collision—so that there was no room for the operation or application of the doctrine of a wanton or intentional injury under the averments of the complaint.—*Ga. Pac. Ry. Co. v. Lee,* 92 Ala. 262, 272; *Chambliss v. Mary Lee Coal & R. Co.,* 104 Ala. 655.

"Plaintiff's intestate having been thus guilty of negligence in going upon defendant's track, that negligence is to be held a contributing cause to his death along with any alleged and proved antecedent negligence of the defendant's employees, so as to bar a recovery by the plaintiff for such negligence."—*Foshee's case,* 125 Ala. 216; *Bower's case,* 110 Ala. 328.

There is a decision of this Court which fits this case precisely, *in principle,* and is somewhat analogous in fact, wherein it was held, *as matter of law,* that Fennell, the plaintiff, was guilty of contributory negligence, in attempting to cross a railroad crossing in driving an electric car, in front of a moving train, *first,* because if he carefully discharged the duty of keeping a look-out before getting on the crossing, *he saw* defendant's train approaching the crossing: *second,* if he omitted to look,

he was equally negligent.—*Highland Ave. & Belt R. R. Co. v. Fennell,* 111 Ala. 356. See also as to province of this court to reverse the judgment of the lower court where the verdict is clearly contrary to the weight of evidence.—*Southern R. R. Co. v. Lollar,* 33 So. Rep. p. 32; *Railway Co. v. Owens,* 33 So. Rep. p. 8; *Chambliss v. R. R. Co.,* 104 Ala. 655.

The usual rate of speed of an engine or train in crossing over another railroad, at a railroad crossing, was a question not only immaterial, but the answer to it was prejudicial in that it permitted the substitution of a custom, and perhaps a dangerous custom, for the particularly careful conduct required by the law in each case—conduct which should be governed largely by the exigencies arising at or about the time of crossing. Furthermore, the dead engineer would not have been justified in doing an obviously dangerous thing, simply because it was customary for other engineers to do so—and evidence of such a custom has been held to be immaterial.—*Andrews v. B. M. R. R. Co.,* 99 Ala. 439. That the evidence would be *wholly irrelevant* see *R. R. Co. v. Burton,* 97 Ala. pp. 251-2; *Glass v. R. R. Co.,* 94 Ala. 581.

Bob Everly, or Eberly, was absent, but it was not sufficiently shown, or, indeed shown at all, that he was out of the jurisdiction of the court, or other evidence adduced to lay a proper predicate for introducing his evidence on the former trial. The only predicate laid is found on pp. 58-9 and on p. 67, bottom line of page.—White's evidence, p. 60; *Abel's case,* 90 Ala. 633; *Pearson v. Darrington,* 32 Ala. 227; *State Bank v. Seawell,* 18 Ala. 616; 32 Ala. 149.

FRANK S. WHITE & SONS, *contra.*—Surely the defendant was not entitled to the general affirmative charge as to the first count. As good and sufficient reason why the peremptory charge requested by the defendant as to the first count ought not to have been given is that there is evidence tending to show that the servants of defendant, on its train, did not use all preventive efforts within their power to avert the catastrophe after discovering the peril of deceased's train as it was approaching the

crossing. This made his negligence, if he was guilty of negligence at all, not the cause of his death, but merely the cause of a condition upon which the negligence of the defendant's servants, in failing to use all their power to avert the collision after becoming aware of the danger, operated as the sole cause of his death.—*C. of Ga. Ry. Co. v. Troshee,* 125 Ala. 217; *Tanner v. R. R. Co.,* 60 Ala. 621; *L. & N. R. R. Co. v. Brown,* 121 Ala. 221; *Central of Georgia Ry. Co. v. Lamb,* 124 Ala. 172.

A witness, who was a locomotive engineer of experience, was asked: "Say the Southern train was coming down here, and that light thrown across there, within 100 feet of the crossing, how far could the engineer see the light?" The objection was on the ground that it called for a conclusion. This witness being an expert in such matters, could give a conclusion. Besides, it was not such a conclusion as could not be given. It was like asking one how far one could hear or see under certain conditions. He had already said that he had been at the place, and was familiar with the surroundings. It was proper to allow this witness to answer, even though he was not an expert.—*A. G. S. R. R. Co. v. Moody,* 92 Ala. 283.

The court did not err in admitting the testimony as to what the absent witness Eberly testified on the former trial. It was shown by the witness examined on the trial that he knew that Eberly was living out of this state, and was living in Texas. This constituted a sufficient predicate for the admission of secondary evidence. *Glennen v. Mittenright,* 86 Ala. 457; *Rice v. Tobias,* 89 Ala. 217; *Watson v. Simmons,* 91 Ala. 568; *Billingsly v. State,* 96 Ala. 126; *Ib.* 98; *Higdon v. Kennerson,* 112 Ala. 355-6; *Moon v. Crowder,* 72 Ala. 89.

SHARPE, J.—This action is to recover for an alleged wrong causing the death of plaintiff's intestate, Charles M. Bryan, which occurred in a collision between an engine attached to a train of the Louisville & Nashville Railroad Company on which Bryan was engineer, and an engine attached to a train of the defendant company, at a crossing of tracks operated by those companies, res-

pectively. In *Southern Railway Company v. Bryan,* 125 Ala. 297, there is a report of the case as it was presented on a former appeal. The last trial was had under the first count of the complaint which charged that the death "was caused by the negligence of defendant's employees who were operating defendant's said train, in the running and management of said train," and the fourth count which attributed the death to "wrongful, wanton or intentional negligence of said employees in charge of defendant's said train, in running said train forward and over said crossing without stopping before reaching said crossing." Issue was joined on pleas to the first count of the general issue and contributory negligence, and on the general issue pleaded to the fourth count. There are assignments of error based on dispositions made of pleadings which not having been insisted on by argument will be treated as waived. For the same reason a like course is taken with assignments of error numbered 7 and 12 and of so much of the assignments as related to refused charges 8 and 13.

An error which must work a reversal occurred in the admission, against defendant's objection, of evidence as to what one Everly testified on a former trial. Such evidence is admissible where a witness has left the state permanently or for such indefinite time that his return is contingent or uncertain, but it is "admitted with great caution, only from necessity and to prevent a failure of justice," and the necessity for it "ought to be shown clearly."—*Harris v. State,* 73 Ala. 495; *Thompson v State,* 106 Ala. 67. The evidence constituting the predicate for proof of what Everly had testified was the testimony of a witness wherein he said with reference to Everly "I don't know exactly where he lives, I saw him about three or four months ago at Cullman, and asked what he was doing and he said he was switching on some line in Texas; I know he is living in Texas," and this statement on cross examination, "I know he is living in Texas because he told me then he was living in Texas." This, with nothing else to show Everly's whereabouts and nothing to show a search for or an effort to

procure his attendance at court, falls short of fulfilling the measure of proof required to lay the predicate.

A similar question is raised on the admission of evidence as to what one Gifford testified on the former trial, but we pass it because improbable that the evidence as to his absence will be the same on another trial.

The testimony being in conflict as to whether the L. & N. train stopped within one hundred feet of defendant's track before going upon the crossing or ran at a rapid rate upon it without stopping, it was not improper to allow a witness who had testified about the speed of that train at the time of the collision to answer the question, "Was that or not about the usual rate of crossing another railroad after it had stopped?" The affirmative answer had some tendency to show the L. & N. train was not running rapidly inasmuch as other evidence, notably the testimony of Lawrence, tended to show that rapid speed was not attainable within one hundred feet after stopping.

A witness shown to have been experienced as a locomotive engineer, and who was being examined about the effect of a headlight, such as was on the L. & N. engine, was allowed to answer this question: "Say the Southern train was coming down here and that light thrown across there within one hundred feet of the crossing, how far could the engineer of the Southern see the light?" The question being in hypothetical form must naturally have been understood as calling for an opinion as to the distance such light was visible from one in the position of defendant's engineer, and was not objectionable as calling for a conclusion.

The following statements of defendant's witness, Johnson, who was a brakeman on its train, were properly excluded, viz: "I thought they would surely stop for the crossing;" "Our engineer must have put on his air just about the time they struck us." "The position of the engines after the accident, and the appearance of the front of the L. & N. engine clearly showed that they struck us, and struck us a very hard blow." The first of those statements was of a mere mental operation. The other two were conclusions and not facts.

On the first appeal it was decided that from the evi-
dence then before the court, it appeared that plaintiff's
intestate, Bryan, was negligent, in that he failed in the
statutory duty of knowing before attempting to cross
defendant's track, that the crossing was clear. At the
last trial the evidence on which that decision was based,
was substantially reproduced, but added thereto, was
the testimony of Lawrence, the fireman of the L. & N.
engine, which tends to show not only that his engine
was stopped within 100 feet of the crossing, but that
thereafter before proceeding both he and Mr. Bryan
made efforts to ascertain whether the crossing was clear,
and that it was in fact clear, at the time they proceeded
to cross. This is inferable from the following testimony
of this witness together with other evidence showing the
accident occurred at night, and that the L. & N. engine
had a headlight and that defendant's engine had none
except a small lantern fixed in the place usually filled by
a headlight, and that defendant's train came from the
right of Bryan as he faced the crossing: "We stopped
long enough to look out and see if anything was coming.
I was on the left side and Mr. Bryan was on the right,
those being our proper places. Bryan asked me how is
everything on your side. I said everything is all right,
go ahead. I could see the way clear about 100 or 150
yards. There was no train in there when we started
across and no light at all. There was a string of cars
on the Southern track running at right angles to our
track, five or six cars extending to within about fifty feet
of the Mineral track we were going on. These cars were
in front and to our right; were about eight feet apart.
I could see and did see Mr. Bryan look up on the right
side of the yard and across the crossing before he started
across. After he stopped we made an investigation, he
was looking when he started, and there was no train at
all for 150 yards up on the Southern track to our right,
and no light at all. There were no cars standing on that
main line track where the collision occurred. No whistle
blowed at all except ours, and no bell rang except ours.
The Southern didn't ring any bell or blow any whistle.
The way was perfectly clear when we started across with

our engine.  We went across there at the rate of some-
thing like three miles an hour, because we stopped dead
still, and a person in that distance could not go very
fast, and it was such a dark, dreary night we were very
careful."

By the statute (Code 1896, § 3441), it is provided
with reference to engineers and conductors that after
stopping and before proceeding to run a train over a rail-
road crossing they must "know the way to be clear."
This provision is to be construed as requiring knowledge,
not only that the crossing is free from immediate ob-
struction, but free from danger of such obstruction as
ought reasonably to be expected.  It does not, however,
require knowledge "that the way will certainly remain
clear against all after occurring, extraordinary, unan-
ticipated and unascertainable happenings."—*Southern
Railway Company v. Bryan, supra.*  Touching further
the conduct of Bryan, and also the conduct of those oper-
ating defendant's train, Lawrence testified:  "When we
started across we gave two short blasts of the whistle,
not very loud, a signal to go ahead, that could be heard
two or three miles around the country.  I rang the bell,
commenced ringing way around in the woods at that
park place before we got around.  I was ringing the
bell when we stopped and after we started—kept on
ringing the bell.  The next thing that happened to us
was a stroke from the approaching engine that struck,
it looked like to me, somewhere about the middle of the
engine," etc.  In view of Lawrence's testimony and the
whole evidence, the question of whether the pleas of con-
tributory negligence was sustained was proper for the
jury's determination.

The question of defendant's liability *vel non* whether
considered under the first or fourth counts of the com-
plaint was likewise proper for determination by the jury,
for the evidence gave room for inference that defend-
ant's servants when running its train to the crossing
were aware of the peril to which that action exposed
those running the L. & N. engine in time to have stopped
before striking.  That being so, it was for all that ap-
pears, open to the jury to further infer and to find, either

34

that the collision and death were due to a negligent failure on the part of defendant's servants to use preventative effort, or that they wilfully, wantonly or intentionally caused the same.—*L. & N. R. R. Co. v. Brown,* 121 Ala., 222; *Central of Ga. Ry. Co. v. Lamb,* 124 Ala. 172; *Louisville & Nashville R. Co. v. Markee,* 103 Ala. 160; *Ga. Pac. R. Co. v. Lee,* 92 Ala. 262.

It follows that the court was right in refusing the requested general affirmative charge and those which expressly or impliedly negatived a right to recover under the first count, viz: charges 3, 4, 5, 9, 10, 11, 12, 18 and 20, and also that it was proper to refuse charges 2, 6, 7 and 21, each of which were inconsistent with any right to recover under the fourth count. Charge 14 is incomplete and obscure, and charge 17 is made bad by the occurrence therein of the word "not." Wantonness or willfulness short of intentional wrong doing might have warranted a recovery under the fourth count, and, therefore, the refusal of charges 16 and 22 was proper. A headlight may be servicable not only to the engineer using it, but as a warning to others of the train's approach. It was wrongly assumed in charge 19 that the absence of a headlight on defendant's engine would not afford ground for recovery if the use of one would not have disclosed an obstruction to the engineer.

The part of the oral charge excepted to involved no reversible error.

Reversed and remanded.