Hillsborough, }
March 2, 1926. }

### DANIEL G. CARLETON v. BOSTON & MAINE RAILROAD.

The statute requiring the driver of a street railway car to stop his car before crossing a steam railroad at grade, and not to proceed until it is ascertained that no train is approaching and that the car may cross with safety (Laws 1921, c. 114, s. 1), does not impose upon the driver of the car an absolute liability for collision with a train. But it does require of him exceptional care, and the taking of every precaution that reason suggests; and he may be chargeable with negligence although it is proved that he took such care as might be taken by the ordinary man in like circumstances.

When it conclusively appears that the driver of an electric car failed to take the specific precautions required by statute on approaching a railroad grade crossing, he must be found to have been guilty of contributory negligence, if the taking of such precautions would have disclosed to him the danger.

CASE, for negligence. Trial by jury and verdict for the plaintiff.

Transferred by *Branch*, C. J., upon the defendant's exceptions to the denial of its motions for a nonsuit and for a directed verdict.

The facts are stated in the opinion.

*Doyle & Doyle* (*Mr. Paul J. Doyle* orally), for the plaintiff.

*Warren, Howe & Wilson* (*Mr. Howe* orally), for the defendant.

PEASLEE, C. J. The plaintiff was the operator of an electric street railway car, and in the course of his duties had occasion to cross the defendant's tracks at East Hollis street in Nashua, near the southerly end of the Union Station. There are six lines of railroad track crossing the street at this point, the two westerly ones being the main lines north and south. Just easterly of these, a spur track

terminates at the north side of the street; and at the time in question it was occupied by one or more cars which somewhat obscured the view of a train approaching from the north.

The plaintiff approached from the east. A freight train was passing northerly on the north-bound main track, which is the second one from the west. The crossing gates were down, but were raised as soon as the freight train passed. The plaintiff had stopped his car, and when the gates were raised he glanced north and south and made no further attempt to ascertain whether a train might be approaching. He was struck while on the most westerly track by a train moving south. If he had looked as he was passing the cars on the spur track he could have seen the approaching train, or the light thrown ahead from the engine, in season to have stopped and avoided the accident.

It was admitted that the gateman failed to exercise due care in the operation of the gates, and the question which has been argued is whether the plaintiff's conduct was such that a recovery should be denied as matter of law.

"In all cases . . . when a street railway crosses a steam railroad at grade, every driver of a car upon the street railway shall, when approaching the point of intersection, stop his car not more than seventy-five feet and not less than twenty feet from the crossing, and, before attempting to cross, carefully examine for approaching trains on the steam railroad; and shall not proceed to cross until it is ascertained that no trains are approaching, and that the street railway car may cross with safety." Laws 1921, *c.* 114, *s.* 1.

If it be conceded for the purposes of the argument that the plaintiff's conduct in relying upon the implied invitation of the gateman to cross, supplemented by an observation of the situation before entering upon the tracks, might be found to be the care of an average person in the same situation, the question remains whether the statute does not impose upon one so situated a further duty which the plaintiff did not perform.

The defendant contends that the true construction of the statute is that a duty is put upon the operator of the street car to know beyond peradventure that the crossing can be made in safety. The argument is that he is, in effect, an insurer of that fact, and that no combination of fortuitous circumstances can excuse him.

The authorities upon the construction of such a statute are conflicting. It has been held in several states that it does not place the operator of the train or car in the position of an insurer, or one who

takes the chances, but merely imposes upon him a duty to exercise the highest degree of care that can reasonably be taken under the circumstances. *Philip* v. *Heraty*, 135 Mich. 446; *Coulter* v. *Railroad*, 264 Ill. 414; *Southern Railway Company* v. *Bryan*, 125 Ala. 297; s. c., 141 Ala. 517; *Billingsley* v. *Railroad*, 177 Ala. 342.

In one jurisdiction the rule contended for by the defendant was adopted, and it was held that a person injured under these circumstances could not recover. *Frese* v. *Railroad*, 290 Mo. 501. The matter is there disposed of in a single sentence and without discussion of the principles involved. The conclusion was dissented from by a minority of the court. The case involved an accident which happened in the state of Illinois, and the interpretation of an Illinois statute by a Missouri court. That court treated the question as one of general law, and ignored the fact that in an earlier case the Illinois court had come to the opposite conclusion in construing a similar piece of legislation. *Coulter* v. *Railroad, supra*.

The contention that the decision of the Missouri court upon this question was approved and affirmed when the case came before the Supreme Court of the United States cannot be sustained. The situation was as follows. The suit was brought under the federal employers' liability act, and the party injured was an engineer. Conceding that he violated the statute, it was claimed that negligence of the fireman contributed to the accident, and that therefore the plaintiff could recover under the provision that the contributory negligence of the injured employee is not a full defense but only goes to reduce the damages. U. S. Stats. 1908, c. 149, s. 3. This was the question taken to the United States court upon certiorari.

The interpretation of the Illinois statute by the Missouri court was not the decision of a federal question. It was a ruling upon a matter which could not be taken to the federal court, and the conclusion of the state court upon it was binding in the federal court. It was so treated there. Mr. Justice *Holmes* states briefly the conclusion of the state court upon this point, and goes on to treat the case upon the basis that such is the law. It was the law for that case, and so far as that court had the matter to deal with. But there is in the final opinion in the case no discussion of this point and no intimation that the court did or did not approve of the views of the state court upon the question as to which the decision of the state court was final. *Frese* v. *Railroad*, 263 U. S. 1.

The defendant also relies upon decisions wherein certain provisions of the federal employers' liability law are held to impose an absolute

liability for certain defective appliances, without regard to whether the employer was at fault in any respect, or responsible in any way save that it made use of the appliance. *St. Louis & Railroad* v. *Taylor*, 210 U. S. 281; *Chicago &c. Railroad* v. *United States*, 220 U. S. 559; *Delk* v. *Railroad*, 220 U. S. 580.

The statute under consideration in those cases is of a class which first appeared in England in 1897. 60 & 61 Vict., c. 37. Before that time the doctrine of liability without fault had been discredited and discarded from the common law. The idea that one might be called to account merely because an injury resulted from things he possessed or controlled or from acts that he did was a part of the very early common law, but had fallen into disuse as the law of negligence had grown, until finally it came to be considered as wholly untenable. Jeremiah Smith, 27 Harv. Law Rev. 235, 344, 409. Nowhere had this been more clearly and decisively declared than in this jurisdiction. *Brown* v. *Collins*, 53 N. H. 442.

So far as the earlier doctrine was retained or revived in England by the decision in *Rylands* v. *Fletcher*, L. R. 3 H. L. 330, it was expressly repudiated here. *Brown* v. *Collins, supra; Gerrish* v. *Whitfield*, 72 N. H. 222; *Moore* v. *Company*, 74 N. H. 305.

In this situation, it would be natural to expect that any legislative reinstatement of the old theory of liability would be expressed in explicit terms. And so it has been. In all the employers' liability acts, including the one construed in the cases above cited, the declaration is plain and unequivocal, and leaves no room for question as to the legislative purpose.

The statute involved here was originally adopted before any of the state employers' liability acts had appeared. Laws 1895, c. 27, s. 13. Although reënacted twice, it remained without substantial change. Laws 1903, c. 88, s. 1; Laws 1921, c. 114, s. 1. It is highly probable that, if the legislature of 1895 had intended a radical departure from the then accepted grounds for legal liability, it would have put the matter in positive and unmistakable terms. It would have been stated affirmatively, as it was in the earlier act making railroads liable for fires (Laws 1840, c. 561), or in the later one imposing added liabilities upon certain employers (Laws 1911, c. 163).

In view of these considerations, it seems to be probable that the thought expressed by the act of 1895 was that the operator was to be held to the exercise of very great care. A new rule of conduct was set up, differing from the common law. *Colston* v. *Railroad*, 78 N. H. 284. An extremely high standard was established, but the

criterion is still the exercise of care, and an absolute liability is not imposed. When this requirement has been fulfilled, the actor does not take the chance of unforeseen and unforeseeable consequences.

The statute purports to be a rule of conduct. It contemplates action which may be taken without fault and without liability. It envisages the use of the actor's faculties in learning the surrounding facts, in determining what those facts signify, and in deciding upon a course of action, in view of the knowledge so obtained. "Ascertain" is here used in the sense of making certain to the mind. If there had been a purpose to go beyond this, and to provide that in all cases of collision between a street car and a railroad train the operator of the street car should be held accountable for the resulting losses or injuries, it is fair to assume that the purpose would have been expressed in some direct and positive language. Liability without fault is not imposed, and infallibility is not required.

The requirement of the statute is that the operator of the car must take every precaution that reason suggests. Merely doing what the ordinary man might think sufficient is not the test. For example, the ordinary man might, perhaps, rely upon the invitation of the gate tender. *Wiggin* v. *Railroad*, 75 N. H. 600. But since the use of his own senses of sight and hearing is open to the operator of the car, he is bound, under the rule of the statute, to make use of these also.

It is manifest that no more concrete rule can be laid down as to what conduct will satisfy the requirements of the statute in a particular case. As in the ordinary action for negligence, each case must depend upon its own facts. *Bonnin* v. *Railroad*, 77 N. H. 559; *Bass* v. *Railway*, 70 N. H. 170; *Ricker* v. *Hall*, 69 N. H. 592. But in the present instance the solution of the problem is not difficult. If the plaintiff had looked, as he was bound to do, when he passed by the obstruction upon the dead-end track, he could have seen the approaching train, or the light it threw ahead, in ample season to have stopped before going upon the south-bound track. His failure to do this was a failure to comply with the requirements of the statute. It contributed directly to his injury and bars a recovery here. If it could be found that he did as much as the average man might have thought sufficient, when he relied upon the invitation of the crossing tender and a look up and down the tracks before starting to cross, the fact would still remain that he did not take the further precautions that were open to him and which the statute required him to take.

The question, how definite the assurance of safety must be in order to justify the operator in entering upon the crossing, need not be considered here. Since it is apparent that the plaintiff would have learned of the danger if he had observed the mandate of the statute, no issue of reasonable reliance upon information obtained is presented. The defendant's motion for a directed verdict should have been granted.

*Judgment for the defendant.*

BRANCH, J., did not sit: the others concurred.