[Alabama Great Southern Railroad Co. v. Williams.]

# Alabama Great Southern Railroad Company *v.* Williams.

### *Action by Employee against Railroad Company to recover Damages for Personal Injuries.*

1. *Action under employer's liability act; sufficiency of complaint.* In an action brought by an employee against a railroad company to recover damages for personal injuries, a count of the complaint which alleges that plaintiff's "injuries were caused by the wanton or intentional negligence of Bill Jones, who was, at the time of said injuries, operating a locomotive on the track of the defendant's road," while stating a good cause of action for wantonness or intentional injury to plaintiff, is insufficient and defective as stating a cause of action under subdivision 5 of section 1749; it not being averred that the engineer having control of the engine was, at the time, in the employment of the defendant.

2. *Same; same.*—In such an action, a count of the complaint which avers that the plaintiff's "injuries were caused by the willful, wanton or intentional negligence of said engineer of defendant who then and there had charge or control of defendant's engine, upon defendant's railroad track," which engine it was averred ran over the plaintiff, sufficiently states a cause of action for wantonness, willfulness or the intentional infliction of the injury by the engineer.

3. *Same; same.*—In such a case, a count of the complaint which avers that the plaintiff "by reason of the wanton, reckless, willful, gross, wrongful or intentional negligence on the part of said engineer, he (plaintiff) has suffered the wrongs and injuries" complained of, is subject to demurrer, in that there is joined in said count a charge for simple negligence and one for wantonness and willful injury.

4. *Willful injury; contributory negligence no defense.*—In an action by an employee against an employer to recover damages for personal injuries alleged to have been caused by the wantonness of the defendant or its employees or by willful or international wrong on the part of the defendant or its employees, contributory negligence constitutes no defense;

[Alabama Great Southern Railroad Co. v. Williams.]

and pleas setting up contributory negligence as a defense to such action are subject to demurrer.

5. *Action against railroad company by employee for negligence; charge of court to jury.*—In an action by an employee against a railroad company to recover damages for personal injuries, alleged to have been inflicted by the wanton, willful or intentional negligence on the part of the defendant, a charge properly defines the negligence complained of and is properly given at the request of the plaintiff, which instructs the jury that "All that is meant in this case by wanton, willful or intentional negligence is the conscious failure on the part of the engineer to use reasonable care to avoid the injury after discovering the danger of the plaintiff, if the jury find from the evidence that there was such a failure, and the injury resulted therefrom, then they should find in favor of the plaintiff."

6. *Same; same.*—In such a case, a charge is free from error and properly given at the request of the plaintiff, which instructs the jury that "An intent to injure on the part of the defendant's employees is not essential to a liability, notwithstanding contributory negligence; it is enough if they exhibit such wantonness and recklessness as to probable consequences as implies a willingness to inflict, or an indifference as to whether injury inflicted therefrom."

7. *Same; same.*—In such a case, where there was evidence tending to show that the plaintiff, in order to avoid being run over by the engine, stepped upon the pilot of the engine and was injured by having fallen therefrom while the engine was in motion, and that the engineer saw the plaintiff step upon the pilot and knew that in such position he was in great danger, a charge is erroneous which instructs the jury that if they believe that "the engineer saw the plaintiff step on the pilot and should further find that plaintiff was in great danger at the time, and that the engineer knew he was in great danger, and he failed to use appliances at his hands to stop the train, then they should find in favor of the plaintiff;" such charge failing to postulate wrongful or willful conduct on the part of the engineer in not stopping the train.

8. *Same; same.*—In such a case, a charge is erroneous and properly refused which instructs the jury that "It was not the duty of the engineer to be on the lookout for plaintiff on the track of the defendant under the evidence in this case, and if you believe from the evidence that the plaintiff's injuries and damage resulted as a consequence of defendant's engineer failing to so be on the lookout, you can not find for the

[Alabama Great Southern Railroad Co. v. Williams.]

plaintiff;" such charge ignoring the fact which the evidence tends to establish, that the plaintiff was, at the time, in very great danger and that the engineer saw him on the pilot and knew that he was in a position of great peril.

9. *Same; same.*—In such a case, a charge is erroneous and properly refused which instructs the jury that "If you believe from the evidence that the engineer of defendant saw plaintiff attempt to step on the pilot of the engine, and then did not see him again until after the accident happened, you must find for the defendant."

10. *Same; same.*—In such a case, a charge is erroneous and properly refused which instructs the jury that "In this case you must find for the defendant unless you are reasonably satisfied from all the evidence that defendant's engineer actually saw plaintiff after the time he stepped on the pilot of the engine and before his leg was run over."

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. A. A. ·COLEMAN.

This action was brought by the appellee, Jack Williams, against the Alabama Great Southern Railroad Company, to recover damages for personal injuries, alleged to have been sustained by the plaintiff while in the employment of the defendant, by reason of the negligence of the defendant's servants.

The complaint, as amended, contained five counts. The averments of negligence contained in the first count are sufficiently stated in the opinion. The second count was in words and figures as follows: 2. "Plaintiff claims of defendant as damages the further sum of fifteen thousand dollars for that whereas the defendant was at the time of the injuries complained of a railroad corporation, and was using and operating a steam engine locomotive on the track of its said road in the State of Alabama. The plaintiff was then and there an employee of the defendant in the discharge of his duties as such employee, and that said duties were that of a brakeman and required him to obey and carry out the instructions of the conductor of said train, and that on, to-wit, the 16th day of January, 1901, he was on a freight train of which Bill Jones was the engineer, and Walter Hunnicutt was the conductor. That said

Hunnicutt instructed him (plaintiff) to get off the caboose and flag the crossing at Woodlawn, and also to notice a hot box. That in obedience to said instructions the said plaintiff got off the train and ran along the side of it, and when he got to the crossing he flagged the crossing. Before leaving, the conductor, however, also instructed plaintiff that when he went to flag the crossing to look at a certain hot box that was on one of the cars. That after flagging the crossing he gave no signal for the train to move ahead, started across the track to carry out the instructions to see about the hot box, and without the blowing of the whistle or the sounding of the bell, and just as plaintiff was about the center of the track, the engineer willfully or wantonly, or intentionally ran his engine upon plaintiff, and when and while the plaintiff was in plain view of him, ran his engine about fifty feet without stopping it. And that while plaintiff was scuffling under the engine trying to save his life, and just about the time the train was stopped the plaintiff's leg was crushed, and had to be amputated. The plaintiff suffered great bodily and mental anguish, was disfigured and permanently disabled for life. The plaintiff avers that his injuries were caused by the willful, wanton or intentional negligence of said engineer of defendant, who then and there had charge or control of said defendant's engine upon defendant's railroad track, and hence this suit."

The averments of negligence of the 5th count are sufficiently shown in the opinion.

The defendant demurred to the 1st count, as amended, upon the following grounds: 1. For that said count is indefinite and uncertain, in that it fails to allege or show wherein the defendant or its servant or servants were guilty of any wanton or willful negligence. 2. For that the negligence in said count is stated merely as the conclusion of the pleader. 3. For that said count joins an action of wanton negligence with an action for simple negligence. 4. That said count alleges acts on the part of the servants of the defendant which constitute simple negligence and then denominates such acts wanton negligence. 5. For that the allegations of said

count show that the servants of the defendant were guilty at most of simple negligence, yet plaintiff after such allegations denominates them willful or wanton negligence. 6. For that said count fails to show or allege that the said Bill Jones was in charge or control of the engine which it is alleged ran upon or over the plaintiff. 7. For that said count fails to allege or show who it was that was guilty of negligence in failing to warn the plaintiff that said train was about to start. 8. For that said count states no cause of action against this defendant in that it fails to allege or show that the servants or any servant of the defendant, knew of any peril plaintiff was in, or that the acts of such servant or servants were done with the knowledge that such acts would probably result in injury to the plaintiff. 9. For that said count fails to allege or show that the defendant owed plaintiff any duty which defendant failed to observe or violated. 10. That said count does not aver or show that after plaintiff's danger became apparent to the engineer he consciously did anything or failed to do anything with a knowledge that his act would likely or probably result in injury. 11. Said count fails to aver or show that the engineer, after he became aware of plaintiff's peril failed to use all the means at hand known to skilled engineers to prevent the accident. 12. Said count fails to aver or show that the engineer, after he became aware of plaintiff's peril, consciously failed to use all means at hand known to skilled engineers to prevent the accident.

To the second count, as amended, the defendant demurred upon the same grounds that it demurred to the first count, and upon the ground that said count joins within itself an action under subdivision 2 with an action under subdivision 5 of section 1749.

To the 5th count the defendant demurred upon the same grounds as interposed to the 1st and 2d counts. The facts of the case are sufficiently stated in the opinion.

The court, at the request of the plaintiff, gave to the jury the following written charges: (1.) "I charge you, gentlemen of the jury, that the actual knowledge

on the part of the engineer that Jack Williams was in front of the engine and in danger, need not be positively and directly shown, but like any other fact, may be proved by showing circumstances from which the fact of actual knowledge is a legitimate inference." (3.) "If the jury believe that the engineer saw the plaintiff step on the pilot, and should further find that plaintiff was in great danger at that time, and the engineer knew he was in great danger, and he failed to use appliances at his hands to stop the train, then they should find in favor of the plaintiff." (5.) "I charge you that all that is meant in this case by wanton, willful or intentional negligence is the conscious failure on the part of the engineer to use reasonable care to avoid the injury after discovering the danger of the plaintiff, if the jury find from the evidence there was such a failure, and the injury resulted therefrom, then they should find in favor of the plaintiff." (6.) "An intent to injure on the part of the defendant's employees is not essential to a liability, notwithstanding contributory negligence; it is enough if they exhibit such wantonness and recklessness as to probable consequences as implies a willingness to inflict, or an indifference as to whether injury inflicted therefrom."

The defendant separately excepted to the court giving each of said charges, and also separately excepted to the court's refusal to give, among others, the following written charges: (26.) "I charge you, gentlemen of the jury, that it was not the duty of the engineer to be on the lookout for plaintiff on the track of the defendant under the evidence in this case, and if you believe from the evidence that plaintiff's injuries and damage resulted as a consequence of defendant's engineer failing to be so on the lookout, you can not find for the plaintiff." (29.) "I charge you, if you believe from the evidence in this case that plaintiff was in the clear of the engine and stepped from the side thereof on to the pilot or attempted to step on the pilot immediately in front of the engine, you must find for defendant." (38.) "I charge you, that if you believe from the evidence that the engineer of defendant saw plain-

tiff attempt to step on the pilot of the engine, and then did not see him again until after the accident happened, you must find for defendant." (39.) "I charge you, that under the evidence in this case, unless you are reasonably satisfied from all the evidence that when the plaintiff got his leg caught under the pilot he turned and saw the engineer looking at him, and that the engineer was, at that time looking at him, and saw him you must find for the defendant." (40.) "I charge you, that in this case you must find for the defendant unless you are reasonably satisfied from all the evidence that defendant's engineer actually saw plaintiff after the time he stepped on the pilot of the engine and before his leg was run over."

There were verdict and judgment for the plaintiff, assessing his damages at $1,083.67. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

A. G. and E. D. SMITH, for appellant.—No brief came to the hands of the reporter.

J. W. BUSH and JOSEPH T. COLLINS, for appellee.

HARALSON, J.—The first amended count in the complaint, comes under sub-division 5 of the employer's liability act, (Code, 1896, §1749), and alleges that plaintiff's "Injuries were caused by the wanton or intentional negligence of Bill Jones, who was at the time of said injuries, operating a locomotive upon the track of defendant's road." That sub-division makes the master liable, "when such injury is caused by reason of the negligence of any person in the service or employment of the master or employer, who has the charge or control of any signal, points, locomotive, engine, etc., upon a railway."

The count does not aver, but leaves it to be inferred, that Bill Jones was an engineer, having control of said engine as an employe of the defendant. From aught averred, he may have been an outsider, having no connection with the company as an employe. The count

was, therefore, defective in this respect, and the demurrer to it should have been sustained. It was in other respects good, as charging wantonness or the intentional injury of plaintiff.

The pleader in this count in characterizing the conduct of the engineer, uses the words wanton or intentional negligence. If the act was done wantonly or intentionally, it cannot be predicated of it, that it was merely negligently done. Such words are frequently inaptly employed, however, as the equivalent of wantonness, and willfulness, or that the act was done intentionally, and we so construe them in this instance.

The second amended count, was not subject to the demurrer, in that it did not sufficiently charge wantonness, willfulness, or the intentional infliction of the injury by the engineer.

The fifth count avers, "that by reason of the wanton, reckless, willful, gross, wrongful, or intentional negligence on the part of said engineer, he [plaintiff] has suffered the wrongs and injuries above mentioned."

The words "reckless," "gross," "wrongful," were unnecessary in averring the wanton, willful, or intentional acts of the engineer. We had occasion to consider the effect of such words in a count in which it was averred, that the intestate's death was caused by "willful act, gross negligence, reckless carelessness and wantonness" of the defendant's employes, and it was held that these words, used in connection and conjunction with the words, willfulness and wantonness, are to be taken as expressing the same idea and not repugnant to them. *L. & N. R. R. Co. v. Orr*, 121 Ala. 489; *M. & C. R. R. Co. v. Martin*, 117 Ala. 367, 382. In the count we consider, the injury is ascribed to the "wanton, reckless, willful, gross, wrongful or intentional negligence on the part of the engineer,"—to either one or the other. We thus have wrongful negligence, and wantonness and willfulness joined in the same count, which cannot be done. *Verner v. A. G. S. R. R. Co.*, 103 Ala. 574. On this account, it was confusing and repugnant. This leaves as the only good count, the one referred to as the second count as amended, which was one for wantonness and willfulness.

The defendant pleaded five pleas to each count, the 1st the general issue, the 2, 3, 4 and 5 were pleas of contributory negligence on the part of the plaintiff, which were demurred to because they were no answers to counts for willfulness and wantonness, and on this ground the demurrer to them was properly sustained.

The plaintiff requested in writing, and the court gave four charges for him, numbered 1, 3, 5, and 6. We have examined these charges, and find, that with the exception of the 3d, they assert correct principles of law. The 3d, without reference to other objections to which it may be liable, is bad for its failure to postulate wanton or willful conduct on the part of the engineer in not stopping the train. His failure might have been due to inadvertence, or simple negligence, and not to wantonness or willfulness.

The defendant requested charges, many of which were given and many refused. It insists only on error in the refusal to give the 26, 29, 38, 39 and 40th.

The evidence in the case tended to show, that the plaintiff while in the service of the defendant as brakeman, was injured by being run over by an engine on defendant's road, and that at the time of the accident, the engineer of the defendant was operating the engine, which a short time before the accident had come to a stop, as it approached a crossing.

The plaintiff testified that the conductor ordered him to go ahead to the crossing, to look after it; that it was customary and usual for him to do this; that the engineer was to blow the whistle and ring the bell, when ready to start, on a signal from witness for him to start; that neither the whistle was blown, nor the bell rung, and plaintiff had not given the signal to start, and that he was about four feet ahead of the engine; that there was a hot-box on the left hand side of the train, which the conductor told him to look after; that while he was standing at the crossing, the engine ran upon him before he could see it; that his back was to it, and he had no way to step out of the way except to step on the pilot; that as he stepped on the pilot, he slipped off and caught on the knuckle of the engine, and both feet went

under the pilot; that he looked to see the engineer, who was looking out of the window at that time; that he scrambled on his legs and knees with his legs under the pilot for about 50 feet, when the pony trucks ran over him, and he pulled himself out and stood up, right against the engineer at the engine, when the engineer said, "I thought some of you damned niggers would get killed," and the engine stopped just at the time plaintiff pulled his leg out. The plaintiff also testified, that the engineer began to stop the engine, after he got his leg out, and between the time he saw the engineer looking at him and the time he got hurt, the engine could have been stopped, before running over his leg.

The engineer testified in connection with what had been stated by the plaintiff, as to the reason or purpose of the stop, that he did not see the plaintiff crawl from under the engine, and did not see him hanging on the knuckle, looking back; that there were obstacles in the way that made it impossible to see him in that position; that the engine had an automatic bell ringer on it, and the bell was ringing at the time plaintiff was injured; that he knew plaintiff was in great danger when he attempted to get on the pilot, but he did not know he was hanging down with his feet under the pilot, and could not have seen him there; the witness did not make any effort at the time, to stop the engine; did not reverse it, open the sand box or put on air brakes; that after witness saw plaintiff get on the pilot of the engine, the engine went some 30 or 40 feet, and that it could have been stopped if he had known the plaintiff was in danger, or had fallen.

The 26th refused charge ignores the fact that the evidence tends to establish, that the plaintiff was at the time in very great danger, that the engineer saw him on the pilot and knew that fact. If so, it was the duty of the engineer to try to save him, if he could, even if it be conceded that he was under no duty to look out for him. The duty to save plaintiff from injury arose, if and when the engineer saw or apprehended his danger.

The 29th charge proceeds on the predicate, that plaintiff was guilty of contributory negligence.

The 38th is bad for the same reason that the 26th was condemned.

The 39th is bad, in that the facts hypothesized, if true, did not excuse the engineer from an effort to save plaintiff from injury, if he knew he was in a position of great peril, as the evidence tends to show was the case, and that the engineer knew it.

The 40th charge was also bad. The engineer may not have actually seen the plaintiff, after the time he stepped on the pilot, but have seen him at the time he stepped on, and if so, then he understood his peril, as his own evidence tends to show.

Reversed and remanded.