# A. G. S. R. R. Co. *v.* Hanbury.

## *Railroad Crossing Accident.*

(Decided April 16th, 1909    Rehearing denied May 11th, 1909.
49 South. 467.)

1. *Railroads; Crossing; Accident; Complaint; Sufficiency.*—Where the action was against one railroad company for the death of the conductor of another railroad from a collision at a grade crossing a count which alleges that the defendant was at the time operating its line for the transportation of freight and passengers, and stating that decedent was a conductor on the other railroad, and averring that defendant's train operated on its railroad, collided with the train or car on which decedent was on the other railroad and that decedent's death was proximately caused by the negligence of defendant's employes who were operating its train in the running and management of the said train, states a good cause of action and sufficiently avers that defendant's servants were acting within the line and scope of their authority in operating said train.

2. *Same.*—Where the action was for the death of a conductor on one railroad caused by a train on another railroad colliding with the car which he was on, at a grade crossing, a count which alleges that the defendant was a corporation operating a railroad for the carriage of freight and passengers, that decedent was in the employe of another railway company whose line intersected that of defendant and that while the train upon which decedent was was over the crossing of defendant's line, defendant's train in charge of defendant's employe or employes came along on defendant's track and its employe or employes in charge of such train wantonly or intentionally ran its engine into the train on which decedent was and killed him, sufficiently charges a wanton or intentional injury, and though not averred in so many words sufficiently charges that the employes operating the train were acting within the line and scope of their employment.

3. *Same; Contributory Negligence; Jury Question.*—Under the evidence in this case it is a question for the jury to determine whether or not the engineer and conductor, who was killed in a collision, were negligent in proceeding with their train over the defendant's track at a grade crossing.

4. *Same; Wantonness.*—Whether employes in control of train approaching grade crossing are guilty of wantonness excusing contributory negligence in attempting to cross at grade crossing depends on whether the conditions of the particular case known to the employes, are such as would impress a reasonably prudent man with the consciousness that such conduct would naturally or probably result in injury; and the question whether they are actually aware of the dangerous proximity of other trains is not a controlling factor; under the evidence in this case the question was properly submitted to the jury.

5. *Same; Duty to Signal.*—Where an engineer approaching a railway crossing in charge of an engine discovers an approaching train on the other railroad in dangerous proximity to the crossing and resorts to every means known to skillful engineers to avoid a col-

[A. G. S. R. R. Co. v. Hanbury.]

lision, no duty rests on him to sound the whistle or ring the bell in order to avert the accident.

6. *Same.*—An engineer in charge of an engine approaching a grade crossing is under no duty to signal a conductor on another train on the grade crossing where the conductor had discovered the danger of the collision and had run through his train to a platform where he was struck by the approaching train and killed, especially where the engineer on the approaching train did not see him since the giving of the signal would not have made the conductor more cognizant of his danger than he already was.

7. *Same; Instruction.*—Where the action was for the death of a railroad conductor caused by a collision at grade crossings by being struck by an engine operated on the other railroad charges were properly refused as misleading which asserted that if the train on which decedent was conductor, and the defendant's train approached the crossing at the same time, and defendant's train had the right to cross first, and the decedent negligently allowed his train to proceed to cross in front of defendant's train, the jury could not render a verdict for defendant unless they believed from the evidence that defendant's servants were guilty of wanton, reckless or intentional wrong.

8 *Same.*—Charges asserting that if the jury believed from the evidence that none of the defendant's servants were negligent after discovering the approach of the train upon which decedent was to the crossing, and that decedent was negligent in going upon the platform at or about the time of the collision are properly refused as misleading, where the question of the wantonness of defendant's servants was involved, and the action was for the death of the conductor in the collision with defendant's train while the two trains were on a grade crossing; the charges were also properly refused as not properly presenting wantonness charged.

9. *Negligence; Imputed Negligence.*—In order that the concurrent negligence of a third person may shield another whose negligence has caused injury to one without fault, the injured person and the one whose negligence contributed to the injury must have sustained such a relation to each other in respect of the matter then in progress that in contemplation of law the negligent act of the third person was the act of the person injured, upon the principle of agency or co-operation in a common or joint enterprise.

10. *Same; Engineer and Conductor.*—Where an engineer and conductor are jointly in charge of a train they are operating in a joint enterprise so that the failure of the engineer to observe the requirements of section 5474, Code 1907, would be imputable to the conductor.

11. *Same; Proximate Cause.*—In order for the negligence of the engineer which is imputable to the conductor in charge of the same train to be a defense to an action for the death of the conductor the enginer's negligence must have proximately contributed to the injury.

12. *Pleading; Pleas; Sufficiency.*—A plea alleging that the accident would not have happened had it not been for decedent's negligence while crossing defendant's track with his train which negligence proximately contributed to his death, states a mere conclusion and is not sufficient, and a demurrer to the plea that it sets out no defense fails to show negligence of decedent, and did not, sufficiently state facts constituting contributory negligence, sufficiently raises the question.

13. *Same.*—A plea alleging that the death of the conductor was caused by the negligence of the engineer in charge of his train which negligence was imputable to the conductor is insufficient and subject to demurrer.

14. *Charge of Court; Ignoring Questions.*—Where wantonness of the defendant was a question properly to be submitted to the jury under the evidence charges which ignored that inquiry were properly refused.

15. *Same; Conformity to Pleadings.*—Where the only plea raising the defense of imputable negligence was ruled out on demurrer, charges invoking that doctrine were properly refused.

16. *Same; Invading Province of Jury.*—Where the question of defendant's wantonness was one for the jury to determine charges asserting that there was no question of wanton negligence or intentional wrong were properly refused as invasive of the province of the jury.

17. *Same; Argumentative Instructions.*—Charges asserting that if any individual juror believed that decedent's negligence contributed in the slightest degree to his death, then plaintiff could not recover on certain counts were properly refused as argumentative.

18. *Same; Assuming Facts.*—Where the action was for the death of a railroad conductor while on his train by being struck by an engine on defendant's track at a grade crossing, a charge asserting that if the decedent, when he saw there was likely to be a collision, left the car on which he was riding and went onto the platform in front of the approaching train, and that his act proximately contributed to his death, then he was guilty of contributory negligence was properly refused as assuming that going on to the platform is negligence.

19. *Appeal and Error; Harmless Error.*—The refusal of an instruction hypothesizing a verdict for the plaintiff is harmless error to the defendant.

20. *Death; Action; Instruction.*—In a death action, charges requested by defendant alleging acts of negligence in defense of the action but failing to hypothesize them as negligence proximately contributing to the injury are properly refused.

21. *Same; Damages; Instructions.*—In an action for death charges asserting that the jury could in their sound discretion impose merely nominal damages if they believed that the death of decedent was caused by negligence so slight or so characterized by mitigating circumstances that the jury would be justified in imposing only nominal damages, and that if the jury believes the evidence decedent was negligent in going on the platform of his train between the cars when the collision occurred and that this negligence proximately contributed to his death, were properly refused.

22. *Same; Contributory Negligence; Instruction.*—A charge asserting that if decedent's negligence contributed in the slightest degree to his death, plaintiff could not recover, was bad for failing to hypothesize that the negligence proximately contributed to the death.

APPEAL from Jefferson Circuit Court.

Heard before Hon. A. O. LANE.

Action by Annie B. Hanbury, administratrix of the estate of Henry M. Hanbury, against the Alabama Great Southern Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The counts of the complaint on which the cause was tried are sufficiently set out in the opinion of the court, as are the facts in the case.

The following pleas were filed by the defendant, to which demurrers were sustained:

"(3) Further answering each count of the complaint separately and severally, except count 20, defendant says that the accident and injury complained of would not have happened, but for the negligence of plaintiff's intestate himself, which contributed proximately to his said injury and death; and the defendant avers that the said proximate contributory negligence of the plaintiff's intestate consisted in this: That as conductor he was in charge of a train which was crossing the track of the defendant, and that in making said crossing he so negligently conducted himself that his train was struck by an engine or train of defendant."

"(8) Further answering each count of the complaint separately and severally, except count 20, defendant says that the accident and injury complained of would not have happened, but for the negligence of plaintiff's intestate himself, which contributed proximately to his said injury and death; and the defendant avers that the said proximate contributory negligence of the plaintiff's intestate consisted in this: At the time of intestate's death he was a conductor upon a railroad which crossed the track of defendant at grade and in charge of the train upon which he was, and that in approaching said crossing he negligently failed to keep a proper lookout for the train approaching on defendant's road. And defendant avers that said crossing was not regulated by

interlocking crossings or derailing switches to prevent collisions at the crossing, and that there was no flagman or watchman at said crossing.

"(9) Further answering each count of the complaint separately and severally, except count 20, defendant says that the accident or injury complained of would not have happened, but for the negligence of plaintiff's intestate himself, which contributed proximately to his said injury and death; and defendant avers that the proximate contributory negligence of the plaintiff's intestate consisted in this: At the time of interstate's death he was a conductor on a railroad which crossed the track of defendant at grade, and in charge of the train upon which he was, and that when he knew or ought to have known of the approach of defendant's train, and that it would likely or probably not stop, he negligently failed to cause the said train to come to a stop or check the speed of the same." And it concludes as does plea 8.

"(12) For further plea to each count of said complaint separately and severally, except count 20, separately and severally, defendant says that the plaintiff's intestate was a conductor upon the said Louisville & Nashville train, and with the engineer was jointly in charge and control of the train, and that the said engineer of the said train negligently propelled the said train upon the said crossing in front of the moving train of this defendant."

The demurrers interposed were: That the facts set out in the pleas are no defense to either of the counts of the complaint, that they failed to show any negligence on the part of the intestate, they do not sufficiently state the facts constituting contributory negligence, and they fail to show that plaintiff's intestate did not have the right of way over defendant's crossings, and that they were conclusions of the pleader.

[A. G. S. R. R. Co. v. Hanbury.]

The following, among other charges, were refused to the defendant:

"(46) If you believe from all the evidence that the train of the Louisville & Nashville Railroad Company and the train of the defendant approached the crossing at the same time, that the train of defendant had a right to proceed over said crossing first, and if you believe from the evidence that plaintiff's intestate negligently allowed his train to proceed in front of the train of defendant to cross or attempt to cross said railroad crossing, then you cannot sign a verdict for the plaintiff, unless you should believe from the evidence that defendant's servants or agents were guilty of reckless and wanton or intentional wrong."

"(40) The court charges the jury that the duty of the engineer and conductor of the Louisville & Nashville train was not performed by one or both of them stopping the train and looking towards the defendant's train or stop board, but that it was the duty of both of them to continuously be on the lookout along the track of the defendant on approaching said railroad crossing; and if you are reasonably satisfied from the evidence that one or both of them neglected this duty, and that this neglect proximately contributed to the accident and death of plaintiff's intestate, then you cannot find a verdict for the plaintiff, unless you should find from the evidence that defendant's servants or agents were guilty of reckless, wanton, or intentional wrong."

"(8) In your sound discretion you may impose merely nominal damages, if you believe from the evidence that the death of Hanbury, the conductor, was caused by negligence so slight or so characterized by mitigating circumstances as that the jury would be justified in the imposition of such punishment only as is involved in the assessment of merely nominal damages. The court

[A. G. S. R. R. Co. v. ' Hanbury.]

charges you that, if you believe all the evidence in this case, plaintiff's intestate was guilty of negligence in going out on the platform of his train, between the cars thereof, at or about the time the accident occurred, and that such negligence proximately contributed to his own accident and death."

"(5) Affirmative·charge as to the twenty-third count.

"(6) If you believe from the evidence that the negligence complained of is so slight or so characterized by mitigating circumstances as that the jury would be justified in the imposition of such punishment only as is involved in the assessment of merely nominal damages, you may impose such damages, if you should believe from the evidence that the plaintiff is entitled to a verdict."

"(12) The court charges you that, if you believe all the evidence in this case, none of the defendant's servants or agents were guilty of negligence after discovering the approach of the Louisville & Nashville train towards the crossing."

"(10) The court charges you that, if you believe all the evidence in this case, the plaintiff's intestate was guilty of negligence in going out on the platform, between the cars of the train, at or about the time of the collision."

"(15) The court charges the jury that there is no question of wanton negligence or willful injury."

"(9) The court charges the jury that in this case, if they believe the evidence, the employes of the defendant were not guilty of any reckless and wanton or intentional wrong, causing the death of conductor Hanbury."

"(21a) The court charges you that if any individual member of the jury should believe, from all the evidence, that the negligence of plaintiff's intestate, as set out in any one of the pleas of the defendant, contributed in the

slightest degree to his own injury and death, then you cannot find a verdict for the plaintiff on the first or nineteenth count of the complaint."

"(66) If the jury believe from the evidence that Hanbury, when he saw the train of the Alabama Great Southern Railroad approaching his train on the crossing, and that there was likely to be a collision, left the car in which he was riding and went on the platform in front of the approaching train, and that this proximately contributed to his death, then you must find a verdict for the defendant, unless you believe from the evidence that the servants of defendant were guilty of reckless and wanton or intentional wrong."

"(51) If the jury believe from the evidence that plaintiff's intestate was in charge of the train of the Louisville & Nashville Railroad Company jointly with the engineer, then the court charges you that the lookout, on approaching the place where the track of the defendant crossed the Louisville & Nashville Railroad track, and the handling of the said Louisville & Nashville train was joint duty, and if either plaintiff's intestate or his said engineer were negligent in such matter, and such negligence proximately contributed to the accident and death of plaintiff's intestate, then you cannot find a verdict for the plaintiff on the first or nineteenth count of the complaint."

"(53) If the jury believe from the evidence that plaintiff's intestate, by the exercise of proper diligence or by looking out, could have seen the train of defendant approaching the crossing, and that he failed to look out and failed to see the approaching train, but allowed his train to go on the crossing, and that the collision occurred in consequence thereof, then you cannot find a verdict for the plaintiff on the first or nineteenth count.

"(54) If the jury believe from the evidence that plaintiff's intestate, by the exercise of proper diligence, or by looking out, could have seen the train of defendant approaching the crossing, and that he failed to look out and failed to see the approaching train, but allowed his train to go on the crossing, and that the collision occurred in consequence thereof, then we must find a verdict for the plaintiff, unless they should find from the evidence that defendant's servants or agents were guilty of reckless and wanton or intentional wrong."

"(24) The court charges you that if you believe, from all the evidence, that the train of the Louisville & Nashville Railroad Company and the train of the defendant approached the crossing at the same time, that the train of the defendant had the right to proceed over said crossing first, and if you believe from the evidence that plaintiff's intestate negligently allowed his train to proceed in front of the train of defendant to cross or attempt to cross said crossing, then you cannot find a verdict for plaintiff on the first or nineteenth count of the complaint."

Reporter fails to find charge 42 among the refused charges.

A. G. & E. D. SMITH, for appellant.—The court should have sustained demurrers to count 1.—*Daniels v. Carney*, 148 Ala. 81; *Lampkin v. L. & N.*, 106 Ala. 287; *Woodward I. Co. v. Herndon*, 114 Ala. 214; *Postal T. Co. v. Brantley*, 107 Ala. 648. It was error to submit this count to the jury whether demurrers were interposed to it or not, and the court should have given the affirmative charge for the defendant as to it.—*C. of G. Ry. Co. v. Lamb*, 124 Ala. 172; *Southern v. Bunt*, 131 Ala. 591; *Central v. Freeman*, 134 Ala. 357; *L. & N. v. Duncan*, 137 Ala. 454; *Bir. R. L. & P. Co. v. Enslen*, 144 Ala.

[A. G. S. R. R. Co. v. Hanbury.]

349, and authorities supra. For the same reason and on the same authority the court should have given the affirmative charge as to count 19. This is also true of the 23rd count. Demurrers should have been sustained to the 23rd count because of an insufficient statement of wantonness.—*Bir. L. & P. Co. v. Brown*, 43 South. 342; *Scarborough v. Rowan*, 125 Ala. 509. The 8th plea was good as originally filed.—Sec. 3441, Code 1896. Even without this statute the plea would have been good.— 36 N. Y. Supp. 417; 109 Mich. 595; 64 Minn. 159; *Southern Ry. Co. v. Bryan*, 125 Ala. 297. The A. G. S. had the right of way over the L. & N. at the crossing and it was negligence to have proceeded without ascertaining that the crossing was clear.—*Jacobs case*, 101 Ala. 149; *Southern Ry. v. Bonner*, 37 South. 702; *Southern v. Jones*, 143 Ala. 328. The demurrers to the 12th plea should have been overruled.—Authorities supra. The court should have given charges 17, 18, 23, 37, 40, 51 and 52.—*Southern Ry. v. Bonner, supra; Southern Ry. v. Bryan, supra; Bir. South. v. Powell*, 136 Ala. 232; *Ga. Pac. v. Lee*, 92 Ala. 261. Under this last authority charges 5, 26, 27, 28, 29, 30 to 36 inclusive, 38 and 39, 9, 15, 25, 45 and 47 should have been given.—*Bir. Min. R. R. Co. v. Jacobs, supra;* 10 should have been given.— *C. of Ga. Ry. Co. v. Foshee*, 125 Ala. 199. The court erred in reference to the testimony of the witness Keeton.—*Self v. The State*, 12 L. R. A. (N. S.) 238.

JOE C. HALE, for appellee.—Counts 1 and 19 charge simple negligence.—*M. & C. v. Martin*, 117 Ala. 367; *Bir. R. L. & P. Co. v. Baker*, 132 Ala. 507; *Railroad v. Robertson*, 125 Ala. 483; *Orr v. L. & N.*, 121 Ala. 489; Count 23 sufficiently charged wantonness.—*R. R. Co. v. Thompson*, 62 Ala. 494; *Chewning's case*, 93 Ala. 24; *Burn's case*, 121 Ala. 221; *Armstrong's case*, 123 Ala.

[A. G. S. R. R. Co. v. Hanbury.]

233; *Lee's case*, 45 South. 292; *Burgess' case*, 119 Ala. 557. It was the duty of the A. G. S. employes to use all means at hand to stop the train and prevent the injury, and should have blown the whistle and rung the bell.— *L. & N. v. Young*, 45 South. 238; *Haley v. K. C.*, 21 South. 357; *Nave's case*, 11 South. 391; *Jacobs v. B. M. R. R. Co.*, 13 South. 408; *Lee's case, supra*. They should have stopped their train before reaching the crossing.— *Strong v. R. R. Co.*, 8 Am. R. R. cases, 274; *Jacob's case, supra*. On these authorities the court properly refused the instructions requested by the defendant.

DENSON, J.—Near Woodstock, in Bibb county, the Alabama Great Southern Railroad and the Birmingham Mineral Railroad (the latter being a branch of the Louisville & Nashville Railroad) intersect each other at grade. The crossing is known as "Blocton Junction." The course of the Alabama Great Southern, at the junction, is north and south, while that of the Birmingham Mineral is east and west. The plaintiff's intestate, Henry M. Hanbury, was in the employment of the Louisville & Nashville Railroad Company, as conductor of a passenger train, and on the 25th day of September, 1905, while the train of which he was at that time conductor was passing over the crossing above referred to, one of the defendant's engines, drawing a freight train, ran into the passenger train, and caused his death. This action is brought by the administratrix of the estate of the deceased Henry M. Hanbury, against the Alabama Great Southern Railroad Company, to recover damages for the alleged wrongful and negligent killing of the intestate. The trial of the cause in the circuit court resulted in a judgment in favor of the plaintiff in the sum of $10,000, from which judgment the defendant prosecutes this appeal.

There were numerous counts in the complaint, some original, and others added by way of amendment; but before the cause was submitted to the jury all of the counts, saving the first count as amended, together with the nineteenth and the twenty-third, were by leave of the court withdrawn by the plaintiff. Demurrers to these three counts were overruled by the court, and that ruling is here challenged by appropriate assignment of errors. Sundry grounds are assigned for the demurrer to the first count, but we find only one point made against it in brief of appellant's counsel, namely, that it does not aver or show that the agents or servants of the defendant were acting within the line and scope of their authority, and it is conceded in the brief that this point is not presented by the demurrer; but the argument in support of the point proceeds upon the theory that, without the averment that the persons operating defendant's train were, in running the train, acting within the scope of their authority, the count fails to state a substantial cause of action—would not support a judgment by default, and therefore that the affirmative charge requested by the defendant, in respect to said count, should have been given. The count seems to be a copy, mutatis mutandis, of count 1, which was held good against a demurrer, on the ground of generality of averment in respect to negligence, in the case of *Southern Railway Co. v. Bryan, Adm'x.*, 125 Ala. 297, 28 South. 445. But the point now presented was not made in that case. However, we are of the opinion that the point is not well taken in the present case.

In the premises of the count it appears, among other things, that the defendant, on the day of the accident, was operating its line of railroad (that intersecting the Birmingham Mineral Railroad at Blocton) for the transportion of freight and passengers, and, after stating that

plaintiff's intestate was conductor of a train of the Birmingham Mineral Railroad that was passing over said crossing on the 25th day of September, 1905, the count avers that "defendant's train, consisting of an engine, operated by steam, and several cars, came along over said defendant's said railroad toward Birmingham, Ala., and ran into or collided with the train or car on which plaintiff's intestate was riding," etc. The count then continues: "And plaintiff avers that the death of her intestate was proximately caused by the negligence of defendant's employes who were operating defendant's said train of cars, in the running and management of said train," etc. It seems to us that it would be extremely technical to hold that the count fails to show a substantial cause of action, or even to hold that it fails to show that the servants of the defendant were acting within the line or scope of their authority in operating the said engine and cars. The facts here alleged clearly differentiate the instant case from that of *Daniels v. Carney*, 148 Ala. 81, 42 South. 452, 7 L. R. A. (N. S.) 920, 121 Am. St. Rep. 34, relied upon by the appellant's counsel to support their contention.

There is scant, if any, difference between the first count, as amended, and the nineteenth count. The same demurrer is filed to each, and the same course has been adopted, in the brief, in the treatment of the two counts. So that, upon the foregoing considerations, it must be held that there is no merit in the points made in the brief against the nineteenth count.

Count 23 is in the following language: "The plaintiff claims of the defendant the sum of $25.000, as damages, for that heretofore towit, on or about the 25th day of September, 1905, the defendant was a body corporate, and for the carriage of freight was operating a railroad running through the state of Alabama, a line of said road

running through Jefferson and Bibb counties, in Alabama, near the village of Woodstock, in Bibb county; and on or about the 25th day of September, 1905, the Louisville & Nashville Railroad Company was also, for the carriage of freight and passengers, operating a railroad in said counties, near the village of Woodstock, in Bibb county, Ala., commonly known as the 'Birmingham Mineral Railroad,' which also passed through Jefferson county and Bibb county, in said state, and crossed defendant's railroad near said village of Woodstock, at grade, said crossing being known as the 'Blocton Junction.' And plaintiff further avers that on or about the said 25th of September, 1905, her intestate was a conductor in the service or employment of said Louisville & Nashville Railroad Company, and was running a train of cars on said Birmingham Mineral Railroad, and over and across said defendant's railroad at said Blocton Junction; and when the train of cars or car on which plaintiff's intestate was a conductor, and on which said plaintiff's intestate was riding, was upon said crossing, defendant's train, consisting of an engine operated by steam, and several cars, in charge of defendant's employe or employes, came along on said defendant's railroad towards Birmingham, Ala., and that defendant's employe or employes, who were in charge of said engine and train of cars recklessly and wantonly or intentionally ran defendant's said engine into and collided with the train or car on which plaintiff's intestate was conductor and on which plaintiff's intestate was riding, and thereby killed plaintiff's intestate. And plaintiff further avers that the said defendant's employe or employes, who were in charge of and operating said train, recklessly and wantonly or intentionally caused the death of plaintiff's intestate, in that defendant's said employe or employes recklessly and wantonly or intentionally caus-

ed said collision, to plaintiff's damages in the sum of $25,000."

It occurs to us that the facts set forth in the count show, with sufficient certainty, that the employe or employes operating the train were acting within the scope of their authority, although it is not averred in so many words that they were so acting. And according to the cases of *Birmingham Mineral, etc., Co. v. Jacobs,* 92 Ala. 187, 192, 9 South. 320, 12 L. R. A. 830; *Louisville & Nashville Railroad Co. v. Anchors,* 114 Ala. 492, 500, 501, 22 South. 279, 62 Am. St. Rep. 116; *Louisville & Nashville Railroad Co. v. Orr,* 121 Ala. 489, 498, 26 South. 36; *Memphis & Charlestown Railroad Co. v. Martin,* 117 Ala. 367, 381, 23 South. 231; *Birmingham, etc., Co. v. Baker,* 132 Ala. 507, 31 South. 618; and *Alabama Great Southern Railroad Co. v. Williams,* 140 Ala. 230, 237, 37 South. 255—the count is sufficient as one charging a wanton or intentional injury, is in case as against the defendant corporation, and is not subject to the demurrer interposed thereto.—*Highland, etc., Co. v. Sampson,* 112 Ala. 425, 434, 20 South. 566; *Southern Bell, etc., Co. v. Francis,* 109 Ala. 224, 19 South. 1, 31 L. R. A. 193, 55 Am. St. Rep. 930; *City Delivery Co. v. Henry,* 139 Ala. 161, 34 South. 389; *Hess v. Birmingham, etc., Co.,* 149 Ala. 499, 42 South. 595.

Besides the general issue, the defendant pleaded 11 special pleas, in 10 of which contributory negligence of the plaintiff's interstate is relied upon as a defense; and by the twelfth plea the defendant set up contributory negligence of the engineer in charge of the engine which was drawing the train of which the intestate was conductor, and sought to impute the engineer's negligence to the intestate. Demurrers were sustained to pleas 3 and 12, and also to pleas 8 and 9 as these two last mentioned were originally filed. It is obvious, under our

decisions, that plea 3 is open to the demurrer that it states a mere conclusion. It is also clear that, even if pleas 8 and 9 in their original form were not open to the demurrer directed against them, the amendment, made after demurrer sustained, placed no greater burden upon the defendant, under said pleas, than was rightly upon it under said pleas as they originally stood. Furthermore, all the matters set up in said pleas were gone over in the evidence, and the defendant cannot take anything on the grounds of error challenging the trial court's judgment on the demurrers to these pleas.

Whether or not the negligence of an engineer of a passenger train may be imputed to the conductor of the train, in a case like this, has not been determined by this court, so far as we are now advised. Generally speaking, "in order that the concurrent negligence of a third person can be interposed to shield another, whose negligence has caused an injury to one who was without fault, the injured person and the one whose negligence contributed to the injury must have sustained such a relation to each other, in respect to the matter then in progress, that in contemplation of law the negligent act of the third person was, upon the principle of agency, or co-operation in a common or joint enterprise, the act of the person injured."—*Town of Knightstown v. Musgrove,* 116 Ind. 121, 18 N. E. 452, 9 Am. St. Rep. 827; 29 Cyc. 542. This court has recognized the principle above stated in the cases of *Elyton Land Co. v. Mingea,* 89 Ala. 521, 529, 7 South. 666, and *Birmingham, etc., Co. v. Baker,* 132 Ala. 507, 31 South. 618. Here, the twelfth plea shows that the plaintiff's intestate was the conductor of the train into which defendant's train ran, and that he was, with the engineer of said train, jointly in charge and control thereof. It also avers that the engineer of the train negligently propelled the said train

upon the crossing, in front of the moving train of the defendant.

It seems to us that the plea shows a co-operation of the engineer and the conductor, in a joint enterprise, in such sort as brings the case within the doctrine above stated, and, construing the plea in connection with the statute (section 3441, Code 1896; section 5474, Code 1907), which provides: "When the tracks of two railroads cross each other at grade, engineers and conductors must cause the trains of which they are in charge to come to a full stop within one hundred feet of such crossing, and not proceed until they know the way to be clear," etc.—the co-operation of the engineer and conductor, their joint responsibility in respect to carrying out the requirements of the statute, and their joint control of the train, are matters clearly fixed, and fixed in such sense as that the negligence of the one, in respect to the duties imposed by the statute, is imputable to the other. Cases cited, supra; *Martus v. D. & L. W. Ry. Co.,* 15 Misc. Rep. 248, 36 N. Y. Supp. 417; *Abbitt v. Railroad Co.,* 150 Ind. 498, 50 N. E. 729. But the twelfth plea is open to one or more of the grounds of the demurrer sustained to it, aside from the ground which presents the point above discussed. Negligence on the part of the engineer, or even on that of the person injured, to prevent a recovery, must have proximately contributed to the injury, and a plea which fails to show such proximate contribution is bad. The demurrer is sufficiently specific to present this point, and the circuit court committed no error in sustaining the demurrer to the plea, as it does not aver or show that negligence of the engineer proximately contributed to the injury.

The collision occurred at about 4 p. m., on September 25, 1905. The passenger train of which plaintiff's intestate was conductor was composed of an engine and

tender 30 feet long, and four cars or coaches each about
60 feet long, thus making the train about 270 feet long.
The defendant's train was composed of an engine and
tender, and 26 or 28 loaded freight cars. The passenger
train was going eastward, and the defendant's train was
approaching the crossing from the south. It is conceded
that the defendant's servants in control of its train were
guilty of simple negligence; but it is insisted by the ap-
pellant that the engineer and conductor of the passen-
ger train were guilty of negligence that proximately con-
tributed to the conductor's death, and that defendant's
servants were not guilty of wantonness, nor of inten-
tional wrong. Whether or not the passenger train made
the stop  required by the  statute, before  proceeding
upon the crossing, is a question upon which the evidence
is in irreconcilable conflict. The fireman of the engine
of the passenger train testified: That his engineer gave
the usual signals for the crossing, and brought the train
to a full stop within the statutory distance; that he (the
fireman) was sitting on the fireman's seat when the
train stopped; that he jumped up and said to the engi-
neer, "Nothing doing over here"; that he was looking
out on the left side, and could see the crossing; that it
was clear; and that the engine stopped, blew for the
crossing, and moved on. The engineer was on the side
whence defendant's train was approaching, but he was
not examined as a witness. Hence there is no positive
evidence that he saw, or did not see, defendant's train,
was then 600 feet distance from the crossing. Further-
more, the evidence for the plaintiff tends to show that
the passenger train was moving at the rate of 4 miles an
hour while passing  the crossing,  and the  undisputed
evidence shows. that the engine  of defendant's  train
struck the passenger train at a point between the rear
coach and the one just forward, thus disclosing that the

passenger train's engine (taking into account its length and the aggregate length of its coaches) was at least 205 feet from the crossing, eastward, when the collision occurred; while the evidence, likewise without conflict, shows that the freight train was running at the rate of 8 to 10 miles an hour, thus demonstrating that, even when the passenger engine reached the crossing, the freight train (if seen by the engineer of the passenger train) was more than 100 feet distant from the crossing. On the other hand, if the freight train was seen by said engineer of the passenger train when, according to the tendency of plaintiff's testimony, the passenger train stopped, it must have been more than 600 feet distant from the crossing. In fact, there is testimony in the record from which it might be inferred that the freight train was at that time as far as 800 feet from the crossing.

Under these conditions or phases of the evidence, the defendant's train, at the time the passenger train moved upon the crossing, even if it had been seen by the engineer and conductor of the passenger train, was not in dangerous proximity. It was some distance short of the point where under the law it was required to stop, and those in control of the opposing train could legally presume that it would stop. Therefore, whether the conductor and engineer of the passenger train, or either of them, was guilty of negligence in proceeding upon the crossing, was a question properly determinable by the jury.—*Birmingham, etc., Co. v. Jacobs,* 101 Ala. 149, 13 South. 408; *Southern Railway Co. v. Bryan,* 125 Ala. 297, 28 South. 445; *Southern Railway Co. v. Bonner,* 141 Ala. 517, 37 South. 702. It follows that the court properly refused those charges requested by the defendant, asserting, as a matter of law, that the engineer and conductor, or either of them, was guilty of negligence;

and also properly refused the general affirmative charge, as to the whole case, and as confined to counts one and nineteen. In this category fall charges 1, 2, 4, 18, 17, 21, 3, 16, 22, and 47; and, of these, charges 18, 19, and 21 are also misleading.

It is important now, to determine whether or not the conditions and circumstances developed by the evidence afford a reasonable inference of wantonness. The trial court evidently took the view that they do, as is evinced by the oral charge, as well as by the rulings made in respect to special instructions requested in writing by the defendant. The crossing where the collision occurred is about a fourth of a mile from the village of Woodstock. So far as the evidence shows, there are no houses near the crossing except the station house of the Birmingham Mineral Railroad, which is from 200 yards to 250 yards west of the crossing. The only evidence in respect to the frequency of the passage of trains of the Birmingham Mineral, over the crossing, during the day, is that two trains had passed in the forenoon of the day of the collision, one at 8:55 and the other at 9:55, and that one passenger train (that with which defendant's train collided) reached there at about 4 in the afternoon. The passenger train was 15 minutes late when it reached the crossing, the defendant's train was on its schedule time. The crossing was not regulated by interlocking device, derailing switches, or other safety appliances, of like kind, designed to prevent collisions, and no flagman or watchman was stationed there. The engineer of the freight train, of course, knew the crossing was ahead of him; and, notwithstanding the evidence in this record shows that only two trains had on that day passed along that section of the Birmingham Mineral, before the passenger train in question, it is not burdensome to charge him with knowledge that

trains on that road were liable to pass at any time. Indeed, he must have known that it was near the due time of the very train he ran into, although it was 15 minutes late. That the crossing was not equipped with or regulated by safety appliances was also known to him, and he, of course, knew the distance within which his train could be stopped. Under these conditions and circumstances—granting that he did not see the passenger train—according to his own testimony he released his brakes when his train (composed of an engine and 26 cars) was 600 feet from the crossing, and began working steam on his engine. Continuing, he testified that his train thereupon approached the crossing with accelerating motion, and was running at such a rate of speed when he first became aware of the presence of the passenger train (which was, as he stated it, when his train was at least 125 feet distant from the crossing), as to baffle all means known to skillful engineers that would tend to stop it before it reached the crossing, in time to prevent the collision—and this, notwithstanding his train was moving upgrade.

Manifestly the law considers the crossing of two railroads a more dangerous place than the crossing of a public highway and a railroad. This is evidenced by the fact that trains are required by statute to come to a full stop within 100 feet of any railroad crossing, and to see that the way is clear before proceeding. That employes having charge and in control of trains approaching railroad crossings are not actually aware of the dangerous proximity of other trains, should not, we think, be a controlling factor in determining whether or not wantonness may be predicated of their conduct in attempting to pass their trains over such crossings. The paramount question is: Are the conditions and circumstances of the given case, known to the em-

ployes, such as would impress a reasonably prudent man with the consciousness that such conduct, on his part, would naturally or probably result in injury or disaster? Without further extending this discussion, the court announces the conclusion that, under the conditions and circumstances of the instant case, it was proper for the court to submit the question of wantonness vel non to the jury.—*L. & N. R. R. Co. v. Anchors,* 114 Ala. 492, 22 South. 279, 62 Am. St. Rep. 116; *L. & N. R. R. Co. v. Orr,* 121 Ala. 489, 26 South. 35; *Birmingham Southern R. R. Co. v. Powell,* 136 Ala. 232, 242, 33 South. 875.

The evidence tends to show that the conductor of the passenger train, upon discovering the approach of the defendant's train, ran through the rear coach and onto the platform leading therefrom to the coach next forward; such being the point, or about the point, of his train that received the collision. The evidence also showed that, while the engineer of the defendant's train (after actually discovering the passenger train) did all that a skillful engineer could have done, to prevent the collision, yet he failed to sound the whistle. The court, in the oral charge, and obviously in view of this testimony, instructed the jury as follows: "Now is it not sufficient, gentlemen, that the engineer in charge of the Alabama Great Southern Railroad train should have done all he could to avert the collision. He had to go a step further. He had to do all in his power to avert the injury, why, he would be liable, the company would be liable for the wanton negligence of the defendant's employes. If he could by giving an alarm signal or have done anything within the means or power to have enabled the plaintiff's intestate to escape injury, then the company would be liable, although the engineer may have done all he could to avert the actual collision. It

was his duty not only to avert the collision, but his duty to avert the injury, if he had the means in his power to do so." This charge the defendant duly excepted to. In this connection, the defendant requested the court in writing to charge the jury as follows: "The court charges you that, if you believe all the evidence in this case, there was no duty on defendant's engineer, after becoming aware of the approach of the Louisville & Nashville train to the crossing, to give any signal of his approach by bell or whistle."

The oral charge manifestly makes a distinction between the collision and the injury—the killing of the conductor—and would, in the light of the evidence, leave it open for the jury to find a verdict against the defendant because the whistle was not blown after the engineer discovered the presence of the passenger train, notwithstanding the undisputed evidence shows that the engineer resorted to every means known to skillful engineers to avert the collision, after he was apprised of the dangerous proximity of the passenger train. Then, there is no reasonable inference deducible from the evidence, other than that the conductor was aware, when he started, and while he was passing through the coach to the platform, that a collision was imminent, and that immediately upon his reaching the platform the collision occurred, and he was instantly killed. Therefore we cannot perceive how a blast of the whistle could have prevented the collision, or have made the conductor any more cognizant of the dangerous proximity of the defendant's train than he already was. Moreover, the defendant's engineer did not see the conductor. Withal, the court is of the opinion that no duty rested upon the engineer to sound the whistle after he was appraised of the dangerous proximity of the passenger train. The court erred in the oral charge, and erred in refusing charge 13, set out above.

[A. G. S. R. R. Co. v. Hanbury.]

Having determined that wantonness was a question for the determination of the jury, many of the charges in the defendant's series we hold to have been properly refused for ignoring that inquiry. They are numbers 1, 26, 27, 37, 36, 35, 34, 45, 47, 33, 38, 39, 7, 21, 12, 16, 18, 17, 20, 28, 29, 31, 30, 25, 23, 45, and 32. Charges 40 and 42 were properly refused, for the reason that they invoke the doctrine of imputed negligence; whereas, the only plea setting up in this defense was ruled out of the case by demurrer thereto sustained. Charges 53 and 54 do not hypothesize the acts mentioned, as constituting negligence proximately contributing to the injury. Charges 5, 9, and 15, are general charges in respect to wantonness, and were properly refused. Charges 46 and 24 are misleading. Charges 8 and 6 are patently bad, and were properly refused. Charges 12, 11, and 10 are misleading, and also pretermit wantonness. Charge 21a is argumentative and fails to hypothesize that the negligence of the intestate proximately contributed to his injury or death. Charge 66 assumes that the conductor's gong on the platform was negligence, and is invasive of the province of the jury. Charge 51 hypothesizes a verdict for plaintiff, and, assuming it to be otherwise correct, the defendant was not injured by its refusal. The court committed no reversible error in the rulings on the admissibility of evidence.

For the errors pointed out, the judgment must be reversed, and the cause remanded.

Reversed and remanded.

DOWDELL, C. J., and SIMPSON and MAYFIELD, JJ., concur.